WELLS *v.* GRAND RAPIDS & INDIANA RAILWAY CO.

1. RAILROADS—NEGLIGENCE — MASTER AND SERVANT—EMPLOYEE OF DISTINCT CORPORATION.

Decedent was employed by a paper company to unload cars of coal at its plant. The cars were emptied by releasing pockets beneath them, and while decedent was attempting to open a pocket under a gondola car over a coal pit, and was beneath the car in the performance of his duty, the switching crew of defendant railway company backed several cars against the one under which decedent was working and killed him. Plaintiff brought an action against the railroad company, charging the employees thereof with failure to notify decedent of the proposed movement of the train. By the book of rules of the defendant, a switching crew was required, before moving a car at any factory, to pass along the cars and notify men working in or around them that they were to be moved. Defendant claimed that its switchman in fact walked along the car and failed to see any one around or beneath it. There was a conflict of evidence whether decedent was in a place where he could have been seen or not. *Held*, that defendant's negligence was properly submitted as a question of fact.

2. SAME — DANGEROUS PLACE — SWITCHING CARS — PERSONAL INJURIES — DEATH.

Where decedent, who was injured in opening the pockets under a coal car, had taken a position in the ordinary way on a rail beneath the car, being the only way in which the work could be done, he was not guilty of contributory negligence in assuming such position; and was not chargeable with contributory negligence as a matter of law for failing to notify the switching crew of the fact that he was going under the car, testimony being offered to show that the switching crew had not been working in the vicinity. Decedent had a right to rely upon the alleged custom, if one was found to exist, of notifying men working around cars before moving them.

3. SAME—SAFE PLACE—INSPECTION OF CARS.

Notwithstanding that decedent's employer might have
184 Mich.—19.

provided a safer and more convenient means of dumping coal, where the employees of the defendant railway knew the circumstances and methods of work of decedent's employer and failed to discover and notify deceased of their intention to move the car under which he was working, defendant was not released from liability by any alleged neglect in this particular on the part of the master of plaintiff's intestate.

4. SAME—TRIAL — PERSONAL INJURY—ACTION—SPECIAL QUESTIONS
—VERDICT.

The trial court was not in error in refusing to submit two special interrogatories to the jury (1) whether defendant's switchman, before the car under which decedent was working was moved, when he attempted to inspect the car standing upon the track at the coal pit, knew that some person might be under the car' upon the track, and (2) whether said employee had ever known of a person being beneath a car upon the east rail of the track. Neither question was controlling of the issue. The question whether defendant's switchman exercised reasonable diligence in attempting to discover the employee in the vicinity of the car would not be concluded by a negative answer to either question.

Error to Kent; Brown, J. Submitted April 15, 1914. (Docket No. 40.) Decided March 17, 1915.

Case by William Wells as administrator of the estate of Peter Jenison, deceased, against the Grand Rapids & Indiana Railway Company for the unlawful killing of said intestate. Judgment for plaintiff. Defendant brings error. Affirmed.

*James H. Campbell,* for appellant.

*Lombard, Hext & Washburn,* for appellee.

BIRD, J. Plaintiff's intestate, Peter Jenison, was employed by the King Paper Company of Kalamazoo to unload coal at its plant. This company had constructed, with walls of cement, a coal pit 216 feet long, 52 feet wide, and 19 feet deep, just north of its fac-

tory building. A railway track had been constructed over the coal pit on cement piers and girders, so that cars could be run over the pit and unloaded. The cars were cleaned by opening the pockets underneath the gondola cars, and allowing the coal to drop into the pit. While Jenison was attempting to open one of these pockets under a gondola car, which was standing over the pit, the switching crew of defendant backed several cars onto the one under which he was working, and injured him so seriously that he lived only an hour thereafter. The negligence complained of was the failure of the switching crew to notify him that the cars were about to be moved. Judgment having passed for the plaintiff, the defendant assigns error in this court. The questions raised by defendant's assignments are:

(1) That the trial court should have directed a verdict in favor of the defendant, on the ground that the evidence did not establish negligence on the part of the defendant railway company.

(2) And on the further ground that the deceased himself was guilty of negligence in going under the car without any notice or warning to defendant's employees who were doing the switching of cars upon the track.

(3) That the duty of furnishing the deceased with a safe place to work rested upon the King Paper Company, and not upon the railway company and that such failure of the King Paper Company was the proximate cause of the accident.

(4) The refusal of the trial court to submit to the jury two special questions.

1. It is conceded by the defendant that its book of rules required the switching crew, before moving cars at factories, to go alongside of them and notify the men working in and around them that they were to be moved, and it is conceded that this rule was generally observed, but it is contended by the defendant that there was a reasonable compliance with this rule;

that Switchman McClish walked back on top of the
west wall eight feet away from the track, and, seeing
no one around the four cars on the pit track, he gave
the engineer the signal to back up. It appears that
at that moment Jenison, the deceased, was astride of
the east rail, attempting to open the pocket under the
rear car for the purpose of cleaning it, and that the
failure of McClish to see him was due to the fact that
he was on the opposite side of the car. The question
therefore narrows down to whether McClish exercised
reasonable care in his inspection before giving the
signal to back up. He gives, as a reason for not dis-
covering Jenison, that the work of opening the pockets
was usually done on the west side of the car, and that
he could not see him on the east side of the car with-
out stooping down and looking under it. Both of
these statements are disputed by the plaintiff. It is
claimed the testimony shows that the pockets were
opened on the east side as well as the west side, and
that McClish, standing on the wall 12 feet away from
the east rail, could see a person on the east rail with-
out stooping to look under the car. There was much
testimony taken bearing on this question, and, as a
further aid, the jury were given a view of the prem-
ises. We think the circumstances were such that it
presented a question of fact for the jury.

2. Was the deceased guilty of contributory negli-
gence? It is asserted that he was negligent in going
under the car and sitting on the east rail while doing
the work of opening the pocket. It is asserted, and it
appears to be uncontradicted, that he was doing the
work of opening the pockets in the customary way,
and the only way in which it could be done, consider-
ing the nature of the structure. It is further con-
tended that, before going under the car, he should have
notified the switching crew, who were then working
in the vicinity. Plaintiff's counsel contends the

switching crew had not been switching in that vicinity. Whatever the record may show about this dispute, if it were the custom to inspect and notify the men around the cars before moving them, and the deceased knew of this custom, he had a right to rely upon its being done in this instance. The trial court left the question with the jury, and that was as favorable a view as the defendant had the right to demand.

3. The point is made that the duty rested upon the King Paper Company, and not upon the defendant, to furnish plaintiff with a safe place, and in this connection it is urged that if the King Paper Company had constructed a walk alongside of the track over the pit, on which plaintiff could have stood while opening the pockets, the accident would not have occurred, and that the failure to do this was the proximate cause of the accident. It is perhaps true that the King Paper Company might have made conditions safer and more convenient for its employees in doing such work, but the conditions such as they were, and the methods of doing the work were well understood by the switching crew, and the important question is: Did the crew, in view of these circumstances, do its duty in its attempt to discover and notify the deceased? If McClish had discovered the deceased and notified him, as it is claimed he ought to have done, it is obvious that no harm would have come to him.

4. The submission of the following special questions were requested by the defendant:

(1) "Did McClish, at the time he went down along the wall to inspect the cars on the coal pit track, know that any one might be under a car on the east rail of the track?"

(2) "Had McClish before that time ever known of any one being under a car on the east rail of the track?"

If these questions were answered in the negative, the question would still be an open one as to whether

McClish was as diligent as he ought to have been in discovering the presence of the deceased on the east rail. It is therefore apparent that the answers would not be controlling, and the court fell into no error in refusing to submit them.

The judgment of the trial court is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.