GULF & S. I. R. Co. *v.* ELLIS.

[88 South. 489, No. 21788.]

1. RAILROADS. *Not liable for injuries from shipper's act in moving car.*

Where a shipper ordering freight shipped in carload lots orders or directs the carrier to place the car at the first door of his warehouse, on a house track of the carrier, and where there is no dispute as to language used, but there is a contention as to the meaning of the words used, and the carrier places the car at a door which it understood to be the first door, which understanding is a reasonable interpretation of the language used, and fastens the brakes and makes the car secure for unloading where it is, and where there is no complaint made by the shipper to the carrier that the car is not properly placed, but shipper, undertakes to move the car and releases the brakes and removes the car, and in so doing injures an employee, the carrier is not liable for such injury, and is entitled to a peremptory instruction.

2. RAILROADS. *Moving of car by person injured proximate cause of injury.*

In such case a carrier is not responsible to third persons not in its employment and to whom it owes no duty for defect in the brakes. The proximate cause of the injury is not the negligence of the carrier, or the defect in the brakes, but the proxi-

mate cause is the act of the injured person in moving the car
and releasing the brakes and chock which secured the safety of
the car as placed for unloading.

APPEAL from circuit court of Simpson county.

HON. W. H. HUGHES, Judge.

Action by Earl Ellis against the Gulf & Ship Island Rail-
road Company. Judgment for plaintiff, and defendant ap-
peals. Reversed and rendered.

*T. J. Wills,* for appellant.

Conceding every fact and circumstance shown by the
evidence introduced by appellee in this case to be true, and
granting every conclusion that could be logically and rea-
sonably drawn from the evidence so introduced to exist in
favor of the plaintiff, the evidence fails to show the exis-
tence of a duty on the part of the appellant that it breach-
ed in any particular or any negligence on its part that con-
tributed to or produced the injury complained of. This
being true, the peremptory instruction requested by ap-
pellant should have been given.

The peremptory instruction should have been given on
the further theory that the act of the defendant was not
the proximate cause of the injury even though the defend-
ant was negligent in either or all of the charges set forth
in the declaration. Proximate cause is the negligence,
which in a natural, continuous sequence produces the in-
jury which a reasonably prudent man should have foreseen
would result in injury, without the interposition of the
independent, responsible agent acting upon and giving
new directions to the force producing the injury. If the
defendant were negligent and breached some duty that it
owed plaintiff or his employer in the placing of the car, in
its inspection, or in the condition of the tract, it would not
be liable to plaintiff in damages unless the injury sustained
was the natural and probable result of such negligence and
one which in the light of attending circumstances, defend-

ant ought reasonably to have foreseen might probably occur as a result of such negligence. *Hullinger* v. *Worrell,* 83 Ill. 320; *Woodruff* v. *Bowen,* 136 Indiana, 431; *Western Union* v. *Schriner,* 141 Fed. 438, 41 L. R. A. (N. S.) 678; *Va. Carolina Co.* v. *Mayson,* 62 So. 253; *Briggs* v. *B. R. L. & P. Co.* 66 So. 95; *Western Union Tel. Co.* v. *Farrish,* 71 So. 183, In *Milwaukee & S. F. R. R. Co.* v. *Kellog,* 94 U. S. 469, Mr. Justice Strong said: "The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the wrongful act, and that it ought to have been foreseen in the light of attending circumstances." See, also, *Anderson* v. *B. & O. Ry. Co.,* 81 S. E. 579.

Appellant had placed the car at the point that the employees understood that it was desired to be placed. They set up the brake and chocked the car. This made the car stationary so that no injury could result to Williams or to his employees in unloading. If the chock were removed and the brakes released and the car set in motion by Williams or his employees, appellant could not reasonably anticipate that injury would result therefrom.

Appellant placed the car and made it stationary so that no injury could possibly result therefrom. In order for the car to become a dangerous agency that would produce injury and damages, it became necessary for some new force to act upon it and set in motion. It could only move down grade when set in motion by some outside force. In the natural and ordinary train of events, injury could not result from the act of placing the car and making it steadfast. The car could not and would not move except by the

independent, conscious acts of Ellis and his companion, Garner or some other person. Their acts in moving the car were free, voluntary and disconnected from the act of appellant in its handling and placing of the car.

Beven in his Work on negligence, p. 53, says: "The principle that to fix liability for injuries brought about through a complicated state of facts, the last conscious agency must be sought; and the consideration that, if, between the agency setting at work, the mischief and the actual mischief done, there intervenes a conscious agency, which might or should have averted mischief, the original wrongdoer ceases to be liable, affords the clues for the unraveling of the cases. On the other hand, it might be borne in mind that, though there may intervene various stages in the development of the mischief, yet, if none of these is due to a conscious volation, the last conscious agent continues liable." See, also, *Goodlander Mill Co.* v. *Standard Oil Co.* 63 Fed. 400; *Anderson* v. *B. & O. R. Co.,* 81 S. E. 579; *Von Wangenheim* v. *N. Y. Stock Yds. Co.,* 153 N. Y. St. 696; *McGahon* v. *Indianapolis G. Co.,* 140 Ind. 335; *Fowles* v. *Briggs,* 116 Mich. 425; *M. K. & T. R. R.* v. *Merrill,* 65 Kan. 436

Judge CAMPBELL thus states the rule, in *Marquese* v. *Sontheimer,* 59 Miss. 430: As a rule, every one is liable for his own wrong, and not for that of another. A wrongdoer is responsible for the consequences produced by his own act, but not for what others, acting independently of him and for themselves, may do, even though his act may be the occasion of their wrong doing what they do. That another independent agent, acting on his own responsibility does something, because one has done a particular thing, does not make such a one responsible for the act of the other they are independent actors, and each is answerable for his own act, because of the want of the casual connection between the acts. Consecutive wrongs done by the independent agents cannot be conjoined to increase or enlarge the responsibility of one of them." See, also, *W. U. Tel. Co.*

v. *McKinney,* 109 Miss. 1; *Horton* v. *Forrest City Tel. Co.*
59 S. E. 1022; *A. & V. R. R. Co.* v. *Rooks,* 78 Miss. 91.

If there were negligence on the part of appellant in any
particular under the circumstances and conditions sur-
rounding the placing of the car, and making it stationary
so that it could produce no injury, it could not reasonably
be anticipated that appellee or any other person would
release the car and set it in motion; or if they should re-
lease the car and set it in motion, it would result in injury.
The injury resulted from the independent, conscious, neg-
ligent act of appellee and George Garner, his companion.
These acts intervened and are the proximate cause to which
the injury is attributable. Appellant is not responsible.
The peremptory instruction should have been granted.

*R. C. Russel* and *Mayes & Sanders,* for appellee.

It is untrue that the statement of facts presented in the
appellee's brief has been overdrawn or exaggerated or that
any fact or circumstance has been misstated as will be
verified by this honorable court in reading the record. We
will therefore refrain from bandying words and indulging
in unnecessary quibbling. We stated clearly, that the is-
sues of facts relied upon for liability were in conflict and
that this conflict in the evidence had been solved and fore-
closed in favor of appellee.

The complaint that no elaborate answer was made on be-
half of appellee, to the contention that the court should
have given the refused instruction on proximate cause, is
without merit, since this court will attribute to the trial
court and the trial jury the possession of ordinary common
sense of knowing what is and what is not proximate cause
under the facts as developed, without contradiction as to
how this injury was produced. Nothing intervened from
the spotting of the car by the carrier to affect the condi-
tion of the equipment until thirty minutes later, the equip-
ment was used in the manner made necessary by the negli-

gence of the company to remove the car so that it could be unloaded.

The basis for this argument is laid on the case of *T. & P. Ry. Co.* v. *Brooks,* from the court of civil appeals of Texas, decided April 17, 1909, reported in 118 S. W. 744. The court will observe by a glance at the syllabus in this case that the facts are entirely different from the facts in the case at bar. The obvious distinction between the Brooks case and the case at bar is clearly pointed out in the case of *W. Jersey, etc., R. R. Co.* v. *Cochran,* 266 Fed. 610 and 611, cited in our original brief. It is there held that where the transaction of carriage has been completed by unloading the car and the consignee has taken over the empty car for new purposes, there arises a new situation involving changed relations and new duties as affecting the employee of the consignee operating the car. The consignee then assumes the primary duty of the master to give his servant reasonably safe instrumentalities with which to work and cannot in such case avoid performance of its duty of inspection, because a like duty had previously devolved upon another; and if the consignee master fails in performing the duty, his failure and not that of the carrier becomes the negligence of which the employee should complain.

In the Brooks case the carrier had turned over to Carrington and Company cars which that company would ultimately move to its plant for loading, assuming charge and responsibility over the operations of the car in connection with its private business, and thereby became primarily responsible to its servants for the safety of the cars. This rule is not in conflict with any case cited in our brief, but even if it should be, it is in conflict with the Lott case from this division of our own court and must therefore yield to the reasoning employed in this case.

We cannot think it can be seriously urged that the Brooks case militated against liability under the facts of the case at bar, and this is the only case counsel has been able to find or refer the court to as sustaining the contention urged for reversal.

We respectfully reiterate that there are no errors which would warrant a reversal of the judgment as rendered below.

Ethridge, J., delivered the opinion of the court.

The appellee filed suit against the appellant for personal injury and recovered a judgment for twenty-five thousand dollars from which this appeal is prosecuted.

The plaintiff was a clerk in a store belonging to one Williams at Magee, Miss. Williams had ordered a car of fertilizer from Jackson, Miss., which was shipped over the line of the appellant. When the car reached Magee, the station agent phoned Williams as to where he desired the car placed or "spotted," to use the railroad term for placing a car. Williams directed the agent to have the car placed at the first door of his warehouse, which was north of the depot on a side track, or house track, of the appellant. The track joined the main line north of the depot and north of the warehouse of Williams, and the car was switched in from this end of the main track and was placed in front of the north door of Williams' warehouse. The brakes were set, and the car was chocked so as to be safe for unloading at the place where it was situated. After so placing the car, the train crew moved on, and after they had departed from Magee, Williams sent the appellant and another one of his employees to unload the car. These employees desired to have the car in front of the south door of the warehouse, and one of them went upon the top of the car to release the brakes, and the appellee took a pinch bar, which he borrowed from the railroad station agent, with which he removed a portion of the wood block used to hold the car, and took said bar and after the brakes were released pinched the wheel over the chock with said bar. The track declined to the south, and it was claimed that the brakes would not hold and stop the car in front of the south door. Ellis, being on the ground and seeing that the car was going past the door, placed another chock, or wood block, on the track

to halt the car. The first wheel ran over this block, and the car struck Ellis in such way that he fell with his leg and foot in front of the car, and the first wheel of the car ran over and crushed his leg so it had to be amputated. The second car wheel stopped at the chock so placed.

The proof for the plaintiff showed that the track where the car was left sloped or descended at some angle to the south, the way the car was moved; that is to say, the track was lower towards the south than it was towards the north, and when the brakes were released and the chock moved the car naturally proceeded south by force of gravity, and when it reached the chock had gained such momentum that the first wheel passed over the chock, said chock being a 2x4 scantling.

It was also proved by the plaintiff that merchants were in the habit of pinching or moving cars when left on the side track to suit themselves; that is to say, if the car was not left exactly where it was wanted, it was a custom to release the brakes and take a pinch bar and propel the wheel by lever power with said bar to the place it was desired. The employees who handled the brakes on this occasion testified that the brake heel was worn so that the brakes did not properly operate to check the car. He was not an experienced brakeman, but had on previous occasions handled cars in this way and said that he had stopped cars on this track which contained as much as eighty thousand pounds of fertilizer or freight. The car in the present case contained sixty thousand pounds of fertilizer.

Neither the employees of Williams nor Williams himself requested the railroad company to move the car, nor was there any complaint that the car was placed at the wrong place. Testimony for the railroad company showed that the car had been properly inspected, and that the brakes worked all right, and that in the switching movement the car was stopped with the brakes, and that it was properly placed according to the understanding of the railroad crew as to what the first door of the warehouse meant. It was also testified by the station agent and other witnesses for

the appellant that the car would have been properly placed if complaint had been made or if the railroad had been requestied to so place it. That the station agent had jurisdiction over the crew for this purpose, and that two crews passed daily or at least on the day in question, through Magee.

There was a request for a peremptory instruction for the defendant at the conclusion of the testimony, which was refused. For the plaintiff the court instructed the jury:

"The court instructs the jury for the plaintiff that defendant's duty required it to place the car of fertilizer in question at the first door of the first warehouse north of defendant's depot, at Magee, for unloading, and to have its industrial or house track and the car, its equipment and appliances, in reasonably safe condition for the consignee's employees to unload said freight, provided the jury shall find from the evidence that the usual and customary manner of delivering freight to the consignee at said station was to place car lot shipments of fertilizer at the warehouses of the merchants for unloading.

"If the jury shall further believe from the evidence that defendant negligently failed to spot said car at the first door of the first warehouse and in the usual and customary manner, the plaintiff undertook to unload said fertilizer in the usual and customary manner by moving said car to the proper place for unloading by reason of defendant's failure to properly place the same; and if the jury shall further believe that the defendant negligently failed to provide a reasonably safe track and a reasonably safe car for plaintiff's use, and that plaintiff, in attempting to use said track and said car in the usual and customary manner was injured as a result of defendant's negligence in failing to provide and maintain a reasonably safe track, or in failing to furnish a reasonably safe car, or in negligently failing to properly place said car, and that such injury was directly and proximately caused or contributed to by the negligence, if any, of said defendant company, then and in either such event it will be the duty of the

jury to return a verdict in favor of the plaintiff and the jury should so find."

In addition to the refusal of the peremptory instruction a number of instructions were refused for the defendant which it will not be necessary to notice specifically, as we have reached the conclusion that the defendant was entitled to a peremptory instruction. There is no dispute as to the direction of Williams to the station agent to place or spot the car at the first door of his warehouse which was the first house north of the depot. There is a difference of understanding between the railroad company and the plaintiff as to which door came within the description of the first door of Williams' warehouse. Plaintiff contends that it referred to the first door going north from the depot, while the railroad contends that it meant and was understood to mean by the crew which placed the car and by the agent the first door coming from the entrance of the side track to the main line on the north; that is to say, proceeding from the intersection of the house track with the main track to the south, the first door would be the door in front of which the car was placed. It was the duty of Williams to give specific directions to have the car placed where he desired it. As his language in giving this direction is susceptible to two reasonable interpretations, and as the railroad in good faith, acting upon the reasonable interpretation of this language, placed the car where it was requested to be placed, there was no negligence or fault on the part of the railroad in placing the car. We think the construction placed upon the language used by the railroad company was equally as reasonable as the construction of the language contended for by the plaintiff, and, if there was any fault in the car not being placed at the right place, it was the fault of Williams in not making his direction more specific and certain. Again we think that, if the car was not at the proper place, it was the duty of the plaintiff, before undertaking to move it, to call attention of the rail-

road company to the fact that it was not at the right place and requested them to place the car for proper unloading. The car was undoubtedly safe as it was placed, and if the car had been unloaded into the warehouse at the point it was placed, the injury would not have happened.

It was insisted by the appellee that it had been the cus‧tom for a number of years to move cars in this way, and that the railroad knew that the car would likely be moved in this way, at least that the custom was sufficient to charge it with such notice.

We do not think the evidence justifies the assumption that the railroad knew that the car would be moved. It placed the car at the direction of the consignee. It requested directions specifically for the placing of the car, and it is not a case of the railroad undertaking to place the car according to its own judgment of where it ought to be, but it undertook to act upon specific instructions and secured the car in such way and by such precaution as the injury could not have occurred except by the intervening cause, of the plaintiff and his co-employee releasing the brake, and removing the chock which secured the car in its place. This was the proximate cause of the injury, and it is not a cause attributable to the railroad company.

The cases relied upon by the appellee are not in point ‧in this case. If the facts warranted the finding‧that the habit of the railroad was to place cars to be moved and used by the plaintiff, and that it knew that it would be moved or was placed with the expectation that it would be moved, then the question as to whether the brake was defective would properly have been submitted to the jury. But under the facts in the present case this conclusion cannot be reached. The railroad sought specific instructions and obtained them and followed them according to a reasonable interpretation of the language used. It could not be concluded from the evidence here that the railroad company contemplated that the car would be removed from its place. The railroad company, like any other person is answerable for a breach of its duty or for its torts, but it is not an-

swerable for the wrongs of people not under its control and to whom it owed no specific duty.

The judgment will therefore be reversed, and judgment entered here for the appellant.

*Reversed, and judgment here for appellant.*