### LANZ v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1922.)

No. 3660.

**Railroads ⚙═279—Shipper's negligence held proximate cause of injury to its employé by defective car.**

Defendant railroad company left a loaded car on the tracks of a manufacturing company, plaintiff's employer, in such defective condition that a drawhead pulled out when it was moved. Employés of the manufacturing company substituted a wire cable, and while the car was being moved in the yards in a train with others, the engine stalled on the grade and the engineer then attempted to pull the train back on the level track, but the reverse movement of the train caused the cable to break. The engineer, evidently unaware of the fact that the train had parted and that part of it, including this car, was standing ahead of him on the same track, started forward with the purpose of making a "run" for the grade, and collided with this car with such force that plaintiff, a brakeman, was thrown from the top and injured. *Held*, that the proximate cause of the injury was not the defect, for which defendant might be responsible, but the subsequent negligence of employees of the manufacturing company.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by Albert H. Lanz against the Pennsylvania Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

John Ruffalo, of Youngstown, Ohio (W. S. Metcalfe, of Youngstown, Ohio, on the brief), for plaintiff in error.

J. P. Huxley, of Youngstown, Ohio (Harrington, DeFord, Huxley & Smith, of Youngstown, Ohio), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. In March of 1919 and prior thereto the plaintiff in error, Albert H. Lanz, was employed by the Sharon Steel Hoop Company, a manufacturing corporation, as a brakeman or switchman in the operation and movement of railway cars upon and

⚙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

over the tracks in the yards of said company adjacent to its factory, and upon which tracks it received from the railway company transporting the same cars for loading and cars loaded with material and supplies for use in its factory. These cars were then moved about upon the various yard tracks as necessity or convenience required. On the 5th of March the Pennsylvania Railroad Company delivered to the Sharon Steel Hoop Company at its plant in Lowellville, Ohio, on its O. & P. track No. 1, a car marked "Erie No. 52819." This car was inspected by the inspector of the Sharon Steel Hoop Company, who marked on the side thereof "Center sill spread." When asked why he did not mark it "Shop" or "Bad Order," he said:

"Because it was not what you would call 'bad order.' It would still operate, for there were 13 cars came in there with it: You might go on and use it for months in just the same way."

Shortly after its delivery this car was moved by a crew and engine of the P. & L. E. R. R. Co. to the scales of the Sharon Steel Hoop Company, weighed and returned to O. & P. track No. 1. After it was weighed, it was again examined by the car inspector and marked "Shop." It was then left upon O. & P. track No. 1 for two or three days, but was shoved back from time to time as other cars arrived. On the 8th of March the P. & L. E. R. R. crew, while switching cars in this yard, pulled the drawhead out of this car. Thereupon the inspector of the Sharon Steel Hoop Company and the P. & L. E. crew undertook to use a chain for and in the place of the drawhead to couple this car into a train or "draft" of other cars, but the chain broke and this car was then shoved back on O. & P. track No. 1. The inspector then coupled or tied this car to another car with a piece of wire cable. About 11 o'clock p. m. the yardmaster of the Sharon Steel Hoop Company issued an order to the yard crew of this company to remove this car to the open hearth stockyard, and while shoving it up grade with two other cars, this defective car being in the center, the engine stalled, and the engineer started to back down the grade for a new start. As the engine moved backward, the cable tying the defective car to the other car broke, leaving one car attached to the engine and one car attached to this defective car. Lanz, who was riding upon the forward car, set the brakes on these two cars and brought them to a stop shortly after the cable broke. The engineer, however, ran the engine with the one car attached to it about 700 feet to the rear, and then started forward, accelerating its speed as much as possible, so that the momentum would supplement the motive power of the engine in forcing these cars up the grade. This, of course, resulted in a collision between the two cars that had become detached from the train or draft and the engine with the one car attached. Evidently the engineer up to this time had no knowledge that the train had parted. At the time of this collision the plaintiff in error was upon the defective car, and was thrown therefrom onto the car attached to the engine, and one leg was caught between the cars and severely injured.

At the close of plaintiff's evidence the trial court, on motion of defendant, directed a verdict in its favor. It is the claim of the plaintiff in error that the Pennsylvania Railroad Company was guilty of neg-

ligence in delivering this defective car to the Sharon Steel Hoop Company, and that this negligence was the proximate cause of the accident and injury.

If the drawhead pulled out of this car by reason of the defect in the car at the time it was delivered to the Sharon Steel Hoop Company, and the plaintiff had been injured at the time it pulled out, then it might well be urged that the Pennsylvania Railroad Company should have anticipated such a result, and that its negligence in delivering this car in a defective condition was the proximate cause of the accident and injury; but certainly the Pennsylvania Railroad Company could not be held to have anticipated that if the drawhead should pull out, and the car thereby become disabled and wholly unfit and unsafe to be coupled into a train of cars, the Sharon Steel Hoop Company would undertake to move it in this manner, much less that it would do so without supplying a safe substitute for the drawhead.

The coupling on one end of this car was in good condition. The car could have been moved by itself with safety to every one engaged in that enterprise, by attaching the engine to it by this good coupling; but it was manifestly less safe to attempt to move it in any other way. The facts would support the inference that it was negligence to attempt to couple it into a train of cars without repairing and replacing the drawhead, or substituting something therefor that would be equally as safe and secure. The Sharon Steel Hoop Company's inspector and the Wheeling & Lake Erie yard crew attempted to substitute a chain for this drawhead; but the chain broke and the car was then placed back on the track, where it had stood for several days. This should have been sufficient to have ended experiments of this character. Nevertheless the inspector of the Sharon Steel Hoop Company then undertook to substitute for the drawhead a wire cable, by which he coupled this car into the middle of a train consisting of three cars; that this cable was unsafe and unfit for the purposes for which it was used is indicated by the fact that it broke with the first strain of the reverse movement, although but two cars were behind this improvised coupling and they were on a down grade.

Nor did the parting of the cable directly occasion the accident. These cars that broke away from the engine and the other car were stopped in due time, and there would have been no collision if the engineer, in the exercise of due care, had discovered that his train had parted, and that two of the cars were stationary on the track ahead of him. Under the facts and circumstances of this case, as developed by the plaintiff's evidence, the conduct and negligence of the Sharon Steel Hoop Company, its inspector, and engineer were not merely intervening causes in ordinary and natural sequence that should have been anticipated by the Pennsylvania Railroad Company, but, on the contrary, the supervening efficient and proximate cause of the collision and the consequent injury to plaintiff in error. Lang, Adm'x, v. Railroad Co., 255 U. S. 455, 466, 41 Sup. Ct. 381, 65 L. Ed. 729, and cases there cited.

For the reasons stated, the judgment of the District Court is affirmed.