ALPHONSO MARKLEY v. THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.—90 S. W. (2d) 409.

Division One, February 11, 1936.

*Cyrus Crane, Winston H. Woodson, James F. Walsh* and *R. Arch Smith, Jr.,* for appellant.

*Clif Langsdale* and *Roy W. Rucker* for respondent.

HYDE, C.—This is an action for damages for personal injuries, sustained when plaintiff fell through a hole in the floor of a car furnished by defendant to plaintiff's employer. Plaintiff obtained a verdict for $10,000. Defendant has appealed from the judgment entered on this verdict.

Plaintiff's employer, the Centropolis Crusher Company, operated a rock crusher in Kansas City. Its plant was located on the east

side of a double spur track, running north from defendant's main tracks. Rock, crushed at the plant, was conveyed on an endless belt into a bin, above the spur track, supported on large upright timbers on each side of the track. This rock was loaded from the bin into railroad cars by dropping through a tipple pipe. In loading cars, one employee of the crusher company got on a platform, on the east side of the track, attached to the supports of the bin. From this platform he could reach a rope attached to a lever which opened the tipple pipe and caused the rock to run into the car. He would then get down into the car and move the tipple pipe around so as to distribute the rock evenly in it. When standing in the bottom of the car, he had to reach up to hold this pipe through which the rock came. When it was filled as far as this pipe would reach, the car would be moved so that rock could go into the part not filled. It took about one-half hour to load a car. Three men helped to load cars. The switch track ran downgrade to the north so one man on the track started the car with a pinch bar, another man rode the car and operated the brakes, while the third man stayed at the bin to handle the tipple pipe. The men alternated with each other in this work. Defendant left cars on the switch about 200 feet south of the tipple. Since this rock was shipped to contractors for State Highway construction, it had to be clean, and before cars were loaded the floors were swept. If a hole was found in the floor, the instructions, from the superintendent of the crusher company, were to repair the hole, if it was small enough to be repaired by placing burlap over it, but if not, to report it to him. The superintendent then would decide whether to have other repairs made or to decline to use the car. If the superintendent decided not to repair the car, it was moved on down the track and left empty north of the tipple where it could be picked up by defendant. After a car had been swept out and any holes repaired, it was moved to the tipple for loading.

On the morning of May 15, 1931, the crusher company had orders for six cars to be loaded that day. Plaintiff and two other crusher company employees, Maynard and Bronson, comprised the loading gang. Maynard was sweeping the floors of the cars and moving them with the pinch bar. Bronson handled the brakes and plaintiff the tipple pipe. When Maynard swept the second car to be loaded, he found a hole, about four feet from the north end of the car, about a foot wide and about four or five feet long, running crosswise. He did not report it or patch it with burlap, but placed a piece of corrugated metal roofing over this hole, without nailing it down, as he was moving the car down to the tipple. When it was stopped there, plaintiff moved the lever on the tipple and the crushed rock began to fall into the car. Plaintiff then got into the car and, while moving the tipple pipe over the car, his right leg went through the hole in the

bottom of the car and he was injured. Crushed rock falling into the car created a considerable amount of lime dust, which made it difficult for plaintiff to see, and he said that he did not see either the hole in the car or the piece of tin over it, or know any hole was there, until after he fell through it. Plaintiff testified that his eyes were full of dust from loading the first car when the second car was placed. He said that he knew of the custom and practice of sweeping and loading cars and that prior to the day of his injury, he had swept cars, had found holes in bottoms of cars, had repaired those holes which he thought could be safely repaired, and had notified the superintendent when he found cars which he thought could not be safely repaired. Plaintiff said he was furnished a hammer and nails to nail down burlap over holes. Plaintiff further testified that he knew that many cars did not have perfect floors and said that he had seen cars with such large holes in the floors that they would not hold bales of hay. Other facts deemed material will be stated in discussing contentions made as to defendant's demurrer to the evidence.

■ Defendant contends that the court should have sustained its demurrer to the evidence at the close of the case. Defendant first says that plaintiff, knowing of the condition of many of the cars and the practice of repairing them, assumed the risk. Whatever the law may be elsewhere, our rule is that "the moment negligence comes in at the door, the doctrine of assumption of risk goes out at the window." [Patrum v. St. Louis-San Francisco Railroad Co., 259 Mo. 109, 168 S. W. 622; see also Schaum v. Southwestern Bell Tel. Co., 336 Mo. 228, 78 S. W. (2d) 439; Goodwin v. Missouri Pacific Ry. Co., 335 Mo. 398, 72 S. W. (2d) 988; Webber v. Terminal Railroad Assn., 335 Mo. 11, 70 S. W. (2d) 863.]. That it is negligence for an employer to fail to furnish his employees a safe place of work requires no citation of authority. ■ It is also unquestionably negligence, and defendant so concedes, for a railroad, when it delivers a car to a consignee whose employees are to load it or unload it, to fail to exercise ordinary care to see that it is in such condition that such employees, if exercising ordinary care themselves, can enter it with reasonable safety for the purpose of loading or unloading it. [Sykes v. St. Louis-San Francisco Railroad Co., 178 Mo. 693, 77 S. W. 723; Roddy v. Missouri Pacific Railroad Co., 104 Mo. 234, 249, 15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. Rep. 333; Sasnowski v. Mobile & O. Railroad Co. (Mo. App.), 207 S. W. 865; Rooney v. St. Louis-San Francisco Ry. Co., 220 Mo. App. 273, 286 S. W. 153; Strayer v. Quincy, O. & K. C. Railroad Co., 170 Mo. App. 514, 156 S. W. 732; Hawkins v. Missouri Pacific Railroad Co., 182 Mo. App. 323, 170 S. W. 459; Fassbinder v. Missouri Pacific Railroad Co., 126 Mo. App. 563, 104 S. W. 1154; Tateman v. Chicago, R. I. & P. Railroad Co., 96 Mo. App. 448, 70 S. W. 514; Applegate v. Q. O. & K. C. Railroad Co., 252 Mo. 173, 158

S. W. 376; Allen v. Larabee Flour Mills Corp., 328 Mo. 226, 40 S. W. (2d) 597; Doering v. St. Louis & O'Fallon Railroad Co., 63 S. W. (2d) 450; 9 L. R. A. (N. S.) 857, note; 9 Ann. Cas. 990, note; 41 A. L. R. 114-129, note; 52 C. J. 624, sec. 2175; 22 R. C. L. 932, sec. 177.]

Defendant further contends that it is not liable in this case, because plaintiff's employer had a man sweeping out cars with instructions to repair holes in the floors and to notify the superintendent of holes too large to be repaired, and because this employee actually discovered the hole through which plaintiff fell and covered it up with an old piece of tin. Defendant says that plaintiff's employer selected the car for his use and changed its condition before he used it. These things could only relieve defendant upon the theory that its negligence in furnishing a car, which was not in a reasonably safe condition, was not the proximate cause of plaintiff's injuries because the repair and use of the car by plaintiff's employer intervened thereafter and became, as a matter of law, the sole cause of plaintiff's injury. There is authority to support this view. [Franklin's Admr. v. L. & N. Railroad Co. (Ky.), 160 S. W. 162; L. & N. Railroad Co. v. Weldon (Ky.), 177 S. W. 459; Logan v. C. N. O. & T. P. Railroad Co. (Ky.), 129 S. W. 575; McCallion v. Missouri Pacific Railroad Co. (Kan.), 88 Pac. 50, 9 L. R. A. (N. S.) 866; M.-K.-T. Railroad Co. v. Merrill (Kan.), 70 Pac. 358, 93 Am. St. Rep. 287, 59 L. R. A. 711; Risque's Admr. v. C. & O. Railroad Co. (Va.), 51 S. E. 730; C. I. Railroad Co. v. Mulholland, A. C. 216, 67 L. J. P. C. (N. S.) 1, 77 L. R. (N. S.) 570; Winterbottom v. Wright, 10 Mees. & W. 109.] The reasoning in some of these cases does not seem to fully recognize the modern rule that the liability of a railroad under such circumstances does not have to arise out of contract but is a tort liability, imposed by law, growing out of the railroad's duty to persons whom it might reasonably anticipate would use the car in such a manner as to be injured by the defect. It also seems that some of these cases place too much emphasis upon the fact that the employer of an injured workman may be liable to him for negligence in furnishing him the unsafe car, as an instrumentality or place of work, without considering that, even so, this may be only a concurring cause, with the negligence of the railroad in first furnishing the defective car where it would likely be used, rather than the sole cause thereof.

The rule adopted by the United States Circuit Courts of Appeal seems to us to be the sound rule. This rule is thus stated: "It is a carrier's duty to use ordinary care to deliver cars reasonably safe for the use of shippers and their employees while the cars are being loaded or unloaded. . . . The employer's duty to provide for the employee a safe place in which to work may be added in the circumstances but does not supplant the carrier's duty. 'The carrier cannot impose this duty to furnish cars reasonably safe on the shipper.

. . . If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employee to be loaded, the carrier and shipper are both liable to the injured employee, for the proximate cause of the injury is the defective car. But as between the carrier and the shipper the liability of the carrier is primary, for the reason that the shipper has a right to assume that cars furnished have been inspected by the carrier and found reasonably safe.' " [St. Louis-San Francisco Railroad Co. v. Ewan (C. C. A.), 26 Fed. (2d) 619; Waldron v. Payne (C. C. A.), 277 Fed. 802; Waldron v. Director-General of Railroads (C. C. A.), 266 Fed. 196; Pennsylvania Railroad Co. v. Hummel (C. C. A.), 167 Fed. 89.] The same rule has been followed by the Kansas City Court of Appeals. [Strayer v. Q. O. & K. C. Railroad Co., 170 Mo. App. 514, 156 S. W. 732; Hawkins v. Missouri Pacific Railroad Co., 182 Mo. App. 323, 170 S. W. 459.]

A case, which is illustrative of situations where the negligence of the railroad, in furnishing a defective car, would not be the proximate cause of an injury to a shipper's employee working thereon, is Lanz v. Pennsylvania Railroad Co., 281 Fed. 796. There a car was furnished with the drawhead in such defective condition that it pulled out when moved by the railroad's crew switching in the shipper's yard. After this crew left, an employee of plaintiff's employer tied this car to another car with a piece of wire cable. Late that night the yard crew of the plaintiff's employer, including the plaintiff himself, undertook to move these cars and, while they were doing so, the cable broke: Plaintiff's injuries were caused by a collision of cars thereafter. It is clear that the defective drawhead was not the proximate cause of his injuries, although this car would never have been attached to another car by a cable if the drawhead had not been defective, but it was the breaking of the cable, with which the railroad had no connection, and not the pulling out of the drawhead which caused his injuries. [For discussion of similar intervening causes see W. J. & S. Railroad Co. v. Cochran, 266 Fed. 609; Wells v. G. R. I. Co. (Mich.), 151 N. W. 630; G. & S. I. Railroad Co. v. Ellis (Miss.), 88 So. 489; Potter v. P. & R. Railroad Co. (Pa.), 123 Atl. 791; St. L. & H. Railroad Co. v. Walsh Fire Clay Products Co. (Mo. App.), 16 S. W. (2d) 616; General Box Co. v. Missouri Utilities Co., 331 Mo. 845, 55 S. W. (2d) 442; Rice v. White (Mo.), 239 S. W. 141; 22 R. C. L. 138-140, secs. 22,-23.] Here plaintiff was injured by falling through the hole which he claims made the car defective when defendant delivered it. The jury had the right to find that his injury was directly caused by defendant's negligence, if they believed this car was not reasonably safe for loading by reason of this hole being in the floor, and not solely by something his employer put in or on the car, although his employer may have been also negligent in furnishing the car to him for

his place of work if it remained in an unsafe condition for him to get into to do the work he was required to do. We cannot say as a matter of law that his employer's negligence intervened and became the sole cause of his injury. Therefore, defendant was not entitled to have its demurrer to the evidence sustained on the ground that its negligence could not have been the proximate cause. Jury questions as to these matters will be hereinafter discussed.

There is, however, a fatal defect in plaintiff's case, namely: There is no proof that there was a hole in the car when defendant delivered it at plaintiff's employer's switch. While this fact, like any other fact, could be established by circumstantial evidence, there were not sufficient circumstances shown. There was no evidence to show whether the car in which plaintiff was injured was an old car or a new car, to show when it was brought to the switch of the crusher company, or to show how long it had been there. Defendant's records showed that there were 16 cars on the switch track that morning but it was not shown when any of them were brought there. It was shown that the crusher company was usually in a rush to get cars delivered through the summer months and to get them loaded and pulled out, and that they required a double switch for that reason. Plaintiff said that there were several cars on the switch, that there might have been 8 or 10, but that he did not count them and did not know how many there were. They only had orders for six cars to be loaded. Plaintiff's superintendent said that he did not know whether he saw the car before plaintiff was injured; that it was a regular coal car; that he did not know how many cars had been ordered for that particular time; that they did not dare order more cars than needed because of demurrage; and that if they "kept the cars more than 48 hours they ran into money." All of this evidence tended to show that usually cars were not kept on the switch very long; but it did not show anything about this specific set of cars. It cannot be inferred that there was a hole in the bottom of this car when delivered, because it would have to first be inferred that it had not been on the switch very long, which fact was not shown, but would also have to be inferred from the evidence that cars were not usually kept on the switch very long. Such an inference would be strained and far fetched rather than reasonable.

Nor was there any evidence as to what the hole in the bottom of this car looked like or whether it appeared old or weathered or new. The man who swept out the car only testified to the location, size and shape of the hole. He was the only one who said he saw it before it was first covered. He said that the piece of tin or corrugated roofing was five or six feet long and fourteen to eighteen inches wide, and that he found it thirty or forty feet from the tipple after he had swept the car and moved it down there. He said it was "a pretty bad piece,

old piece.'' He threw it into the car and then got in and placed it over the hole but did not nail it or fasten it in any way. When plaintiff fell through the hole, rock was already falling into the car and he said that he could not say what was over the hole as there was so much dust he could not see it. He said the inside of the car was covered with dust and all of it was a gray dust color. The other men with plaintiff did not see the hole until they saw him with his leg through it and went to pull him out. Bronson said he saw a tin patch over the hole and that the part of the hole he saw was about a foot square. Woods, who ran the rock conveyor, came to the car after plaintiff's leg was pulled out of the hole. He said: ''The rocks were piled up and I guess there was a hole about a foot square.'' He said that he could not see the full length of the hole, but could see a hole there, and that some of the rock had gone through it. Later he saw the metal roofing that had been put over it. The superintendent said: ''The boys showed me where the hole was and I told them to go ahead and put a board over it and go ahead and load it.'' He saw the corrugated roofing from the bottom of the car after plaintiff had been taken out. Plaintiff's evidence failed to disclose sufficient facts from which an inference could reasonably be drawn that the hole through which plaintiff fell was in the car when it was delivered on the switch by defendant. Therefore, plaintiff did not produce substantial evidence to show negligence on the part of defendant but left the matter purely in the realm of speculation and conjecture, and verdicts based on speculation and conjecture cannot stand. [Grindstaff v. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S. W. (2d) 702; Fryer v. St. Louis-San Francisco Railroad Co., 333 Mo. 740, 63 S. W. (2d) 47.]

Not only did plaintiff's evidence fail to show that the hole through which plaintiff fell was in the car when it was delivered or, as we have said, any facts from which that might be reasonably inferred, but plaintiff's main Instruction No. I, of which defendant also complains, failed to require the jury to so find. Even if there were facts, which would authorize the jury to find that this hole was in this car when it was delivered to the crusher company's switch track by defendant, the jury would not be compelled to make this inference. Therefore, it would be error for the court to assume or to say as a matter of law that it was there when delivered, or to fail to require the jury to find that it was there at that time unless that was an uncontroverted fact in the case. This instruction was as follows:

''The court instructs the jury that *it was the duty of the defendant*, Kansas City Southern Railway Company, *at all times mentioned in the evidence, to exercise reasonable care to furnish* to plaintiff's employer, *railroad cars which were reasonably safe for the purposes for which* the defendant knew, or by the exercise of ordinary care, could have known, that *said cars would be used by plaintiff* and other

employees of plaintiff's employer in the reasonable pursuit of the business of plaintiff's employer and that the *defendant*, Kansas City Southern Railway Company, *could not delegate said duty to plaintiff's employer* or to any other person.

"You are further instructed that if you find and believe from the evidence that the defendant, Kansas City Southern Railway Company, *negligently furnished to plaintiff's employer the car in which plaintiff was injured,* if so, *and that there was a hole in the bottom of said car into which plaintiff stepped and was injured,* if so, *while using said car,* as aforesaid, and while plaintiff was in the exercise of reasonable care for his own safety, and if you further find *that the defendant knew or* by the exercise of ordinary care *would have known of said hole,* if any, and that plaintiff might and would be likely to step into said hole and be injured, while using said car, as aforesaid, and while exercising reasonable care for his own safety, *within time prior to plaintiff's injury,* if any, *to have by the exercise of reasonable care, repaired said car* or to have not so furnished said car, if so, and to have thereby prevented plaintiff's injury, if any, then your verdict will be for the plaintiff and against the defendant."

It is clear from the italicized portions of this instruction that it did not require the jury to find that the hole, through which plaintiff fell, was in the bottom of defendant's car when defendant delivered it to plaintiff's employer. On the contrary, it seems likely that it would give the jury the impression that it was defendant's duty to keep it in a reasonably safe condition "at all times" after it had been delivered to plaintiff's employer, and that it was negligent if it thereafter could have "known of said hole within time prior to plaintiff's injury to have by the exercise of reasonable care repaired said car." Defendant certainly was not required to look for and repair defects which did not exist when it delivered the car to plaintiff's employer. The judgment would have to be reversed because of this erroneous instruction.

■ Although plaintiff failed to prove an essential element of his case, we think it reasonably appears from the record herein that proof is available to show the truth about this vital fact. It appears that defendant has records which show how many cars were on the crusher company's switch on the day plaintiff was injured. Undoubtedly these records will show when each car was delivered as well as how long it had been in service and what its recent use had been. It is common knowledge that railroad records do show such matters. It also appears that the crusher company's employee, who swept the car just prior to moving it under the tipple for loading, had ample opportunity to observe this hole and the bottom of the car so as to be able to describe its appearance and condition. It further appears that the superintendent ordered this hole repaired by nailing a board over it, so some

of the other men must have observed what its condition was. Under these circumstances, this court has discretion in the interest of justice to remand the cause for a new trial. [Byrne v. Prudential Ins. Co. (Mo.), 88 S. W. (2d) 344, and cases cited; see also Lee v. St. Louis Pub. Serv. Co., 337 Mo. 1169, 88 S. W. (2d) 337.]

While we have held that the court cannot rule as a matter of law that placing the tin over the hole in the bottom of the car was an intervening act which became the sole cause of plaintiff's injury and prevented defendant's negligence from being the proximate cause thereof, yet unquestionably defendant was entitled to have the jury decide that issue. It seems apparent that plaintiff's employer usually made repairs on the cars furnished by defendant only to stop up the holes enough to keep the rock from falling out, and that it was not its purpose to put on patches which would be safe for their employees to step on, because they were only covering the holes with burlap. While that might be enough protection to keep rock from falling through the hole, it certainly would not withstand the strain of a man jumping quickly down into the car, after turning the rock through the tipple pipe, as it was shown workmen did to facilitate the loading of cars as quickly as possible. Burlap would perhaps be easier to see on the bottom of the car than an old piece of corrugated roofing and would look more like a patch over a hole. The jury could also take into consideration the fact shown by the evidence that a great amount of dust arose from pouring the rock into the cars by the method adopted by plaintiff's employer. Defendant, however, had evidence that there was a strong wind from the south, so that it was a jury question as to whether plaintiff could have seen into the bottom of the car clearly enough to discern either a hole in the floor or the kind of covering used to cover it up. Of course such matters also were material on the defense of contributory negligence.

We do not mean that there would be a jury issue as to plaintiff's employer's negligence intervening, as the sole cause, if his employer had only furnished the car to him in the same condition as defendant delivered it; that could only be a contributing or concurring cause. What makes such a jury issue in this case is that plaintiff's employer changed the condition of the car. Defendant contends that the hole described, in the bottom of this open car, was so clearly obvious in the circumstances under which plaintiff was working, that, even if it was there when the car was delivered, it could not have been reasonably anticipated that anyone engaged in loading would be injured by it, if it had not been repaired at all or if it had been repaired with burlap in the same manner as other cars were repaired. Defendant says that, by placing a weak piece of tin over it, without nailing it in place, the hole was concealed and the car given an appearance of safety, which converted it into a trap because the tin would slip off or break through

when a man stepped on it. The evidence is not clear as to whether it did break or slip but this was also for the jury. There was substantial evidence to show that it was this change in the condition of the car which made its condition not reasonably safe as a place of work, and it was within the province of the jury to say that this act of plaintiff's employer was negligence which intervened as the sole cause of his injuries. If they so found, then negligence of defendant in furnishing the car with such a hole in its floor was not the proximate cause thereof. However, we do not approve the instruction asked by defendant on this issue because it did not make clear the whole situation as we have stated it. [For further discussion of principles involved see 45 C. J. 1322, secs. 881-883; Baker v. L. & N. T. Railroad Co. (Tenn.), 61 S. W. 1029, 53 L. R. A. 474; Kelley v. N. Y. C. Railroad Co. (Mass.), 150 N. E. 849; St. L.-S. F. and T. Railroad Co. v. Gore (Tex.), 69 S. W. (2d) 186; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950; St. L. & H. Railroad Co. v. Walsh Fire Clay Products Co. (Mo. App.), 16 S. W. (2d) 616 (where it was left for the jury to say whether furnishing a car with a defective brake or leaving a board over the derail was the cause of damage done by it on the main line); Jackson v. City of Malden (Mo. App.), 72 S. W. (2d) 850, and cases cited; Restatement of Torts, secs. 440-453.]

█ Defendant has challenged the right of plaintiff to maintain the suit because he had been paid compensation by his employer but that question has been decided against defendant's contention by this court's decision in General Box Co. v. Missouri Utilities Co., 331 Mo. 845, 55 S. W. (2d) 442.

The judgment is reversed and the cause remanded. *Ferguson* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.