THOMAS J. BRADY v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—102 S. W. (2d) 903.

Court en Banc, March 24, 1937.

842

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for appellant.

*Eagleton, Waechter, Yost, Elam & Clark* for respondent.

844

HAYS, J—The appellant, Terminal Railroad Association of St. Louis, hereinafter called the Terminal, seeks the reversal of the judgment below for $15,000, the amount assessed against it by the verdict of the jury as compensation to the respondent, plaintiff below, for personal injuries sustained by him through the alleged want of due care on the part of the Terminal with respect to a certain box-car on which the plaintiff received the injuries while inspecting it for his employer, the Wabash Railway Company (which will be referred to as the Wabash), upon whose inbound or receiving track the car had been placed for that purpose by the Terminal. Both railroad companies are common carriers engaged in interstate commerce and have a connection at Granite City, Illinois.

The plaintiff, in making the inspection, stood upon one of the side ladders of the car and with the aid of his flashlight looked at the grabiron on top and near the edge of the car and then tested that

appliance by pulling on it. When next he placed his weight upon it in an attempt to pull himself up on top of the car, the grabiron and the board to which it was attached came loose, causing him to fall with them to the ground, where upon examining the board he found it had become rotten from end to end on the under side, and to some extent on the upper side around the bolts by which the grabiron was attached to it.

The plaintiff first brought suit to recover against his employer, the Wabash, for his injuries, predicating his action upon the Federal Safety Appliance Act alone (45 U. S. C. A., Secs. 1 et seq.). Within a few months thereafter, and before that case went to trial, he brought the present suit against the Terminal, basing the same both upon said act and alleged common-law liability. The former case was ultimately determined adversely to him by this court. [Brady v. Wabash Ry. Co., 329 Mo. 1123, 48 S. W. (2d) 24, 83 A. L. R. 655.] Additional facts may be found there and need not be stated here. Also, since principles of law announced there are largely determinative of the claim of liability as based upon said statute and the same injury, we will omit plaintiff's citations on the first branch of this case as they are much the same as those cited in the former case. However, we have re-examined them preparatory to this writing.

Plaintiff's petition on which the case was tried charged, and plaintiff's instruction to the jury predicated a recovery upon a finding, in the conjunctive, that plaintiff's injuries were the proximate result of: (1) A violation by defendant of the Federal Safety Appliance Act; (2) defendant's negligent failure to inspect or discover the insecure grabiron or handhold on the car in question when, by the exercise of ordinary care on defendant's part, the same would have been discovered; and (3) defendant's negligence in suffering and permitting the grabiron or handhold to be and remain in an insecure condition, with actual or constructive knowledge thereof and with knowledge that the employees of the Wabash company would be required to go upon the car and use the handhold.

As respondent concisely states, the appellate issues, although contained in numerous points and authorities, are basically: (1) Whether plaintiff made a submissible case for the jury under the provision of the Safety Appliance Act; (2) whether, if plaintiff failed to make a submissible case under that act, he made a submissible case under common-law negligence theories; and subsidiary points, to be stated later if necessary.

I. With respect to the application of the Safety Appliance Act to the situation presented here the primary question for decision is, as it was in the former case, whether the car in question was at the time of plaintiff's injury within the terms of the statutory prohibition as to hauling or using or permitting the hauling or use of, cars on their lines by common carriers engaged in interstate com-

merce. We there pointed out that the statute was intended to prohibit such a common carrier "to haul or permit to be hauled or used on its line" any car with an insecure handhold, as was unquestionably the condition of this Wabash car No. 76085. We held that the car was not being hauled at the time of plaintiff's injury but that its movement had ended some four hours before when the cars were placed on the exchange track of the Wabash by defendant, as licensee, and tendered to the Wabash as receiving carrier; whose nondelegable duty it became under the act to inspect for itself and *ascertain at its peril*, before accepting the tendered cars for shipment on its lines or handling them in any way—except perhaps to make necessary repairs—that such cars were equipped in *every way* and complied in *every respect* with the requirements of the Safety Appliance Act; that the receiving carrier could not rely on the employees of defendant (the delivering carrier) not to deliver to it dangerously defective cars . . . but it was also the duty of the receiving carrier to reject and not to receive or handle cars so tendered by other carriers which are found on such inspection not equipped with safety appliances as required by said act. [Citing Kurtz v. Detroit, Toledo & I. Railroad Co., 238 Mich. 289, 213 N. W. 169, 171; United States v. Northern Pacific Railroad Co. (C. C. A.), 287 Fed. 780, 784; B. & O. S. W. Railroad Co. v. United States (C. C. A.), 240 .Fed. 420, and other authorities.]

In this connection we may add that a railroad company does not perform its duty to inspect handholds on freight cars for. the safety of employees, by having its inspectors merely pass by and look at them, but the handholds must be subjected to a test similar to that they will receive in use. [B. & O. Railroad Co. v. Smith, 169 Ky. 593, 184 S. W. 1108, L. R. A. 1918 F. 1205; affirmed in 246 U. S. 653, 62 L. Ed. 922; Fulton v. Bullard, 37 C. C. A. 1, 94 Fed. 781.]

We determined in plaintiff's former case supra, as the crucial point therein as it is herein, that the Wabash was not "using" the defective car "on its line" at the time and place of plaintiff's injury; that is, not using it in the legal sense of the term as it has been construed by the Federal cases which we there cited and reviewed, viz., United States v. St. Louis S. W. Railroad Co. (C. C. A.), 184 Fed. 28, 32; Erie Railroad Co. v. Russell. (C. C. A.), 183 Fed. 722; Chicago, G. W. Railroad Co. v. Schendel, 267 U. S. 287, 45 Sup. Ct. 303, 304, 69 L. Ed. 614. We found that absolute liability of a railroad for defective appliance "does not" as was determined and stated in Baltimore & Ohio Ry. Co. v. Hooven, 297 Fed. 919, 921, "follow its instrumentalities of transportation beyond their actual present use or hauling, or, more specifically, is it the intent of the act to have absolute liability imposed by .it attach to the vehicle during such time as it is withdrawn temporarily from actual service and after it has reached the place of repair and is undergoing conditioning and

repair for the purpose for which it is intended and for the use to which it is assigned?'' We cited to the same effect Sherry v. B. & O. Railroad Co. (C. C. A.), 30 Fed. (2d) 487, where a car inspector in the defendant's employ was injured while inspecting a car which had been placed on a track of defendant as being in bad order; and also similar cases, McCalmont v. Pa. Ry. Co. (C. C. A.), 283 Fed. 736; Kaminski v. Chicago, M. & St. P. Ry. Co., 180 Minn. 519, 231 N. W. 189; Flack v. Railroad Co., 285 Mo. 28, 224 S. W. 415, 423. Under those authorities, and for like reasons as in the former case, we now conclude that neither was the Terminal so using the car or permitting it to be used on its line at that time and place.

As was stated in the former case, ''The statutory criterion is whether the car is 'in use' 'on its line' within the true purpose and scope of the act.'' This car was not; it had temporarily been withdrawn from use. It would seem that the Terminal had no license to return at will to the Wabash track and remove the car. The right to return for any of them was purely conjectural, was conditioned upon inspection to be made by the Wabash and, inferentially, notice to be given the Terminal of the rejection of such cars as were found ''to be not in condition to continue their journey.'' The temporary withdrawal of the car for inspection and to be further kept out of use if its condition so required, had been completed, so far as the Terminal was concerned, before the injury. And, it may be stated in passing, the Wabash did not reject but retained this car. In support of a like holding made in the former case, the opinion there contains an exhaustive review of the applicable cases, among them B. & O. Railroad Co. v. Hooven, supra; Southern Ry. Co. v. United States, 222 U. S. 20, 25, 26, 32 Sup. Ct. 2, 56 L. Ed. 72; Texas & Pac. Ry. Co. v. Rigsby, 241 U. S. 33, 41, 36 Sup. Ct. 482, 60 L. Ed. 874; Southern Ry. Co. v. Snyder, 187 Fed. 492, 497, 109 C. C. A. 334. As was stated in the former opinion in effect, we here repeat, that in none of the extant authorities was liability held to attach when the defective car was not in actual use within the intent and purpose of the act as it has been construed by the controlling authorities.

While holding that plaintiff failed to make a case submissible under the Safety Appliance Act, we leave for consideration and determination, in connection with plaintiff's common-law claim, the question whether, owing to the nature of his employment and duties, he is within the class of persons intended to be protected by said act. In turning from this phase of the case we wish to observe that we have examined respondent's citations and discovered no conflict between them and those authorities we have referred to above in the application of principles of law which we regard as controlling under the facts of this case.

II. Plaintiff's common-law theory of liability, as stated in his brief, is that plaintiff was the Terminal's invitee and it owed him the positive duty to exercise ordinary care for his safety and to furnish him with a reasonably safe car without any defects which it knew or could have discovered "by a reasonable inspection."

Plaintiff asserts that the defendant, in law, had knowledge of the defective condition of the car in question, because it was its duty to inspect and it will be presumed to have performed that duty; citing the first Brady case and certain cases supra which were reviewed therein, and in which such knowledge is imputed in actions brought, as they were, under the Safety Appliance Act. Those cases involved, not common-law negligence but noncompliance with the Safety Appliance Act. That branch of plaintiff's case, involving such statutory duty with its legal implication of notice of what proper inspection might have disclosed, is now like as water gone over the wheel, and furnishes no aid to plaintiff's common-law claim of liability. The very purpose of said act was to supply the lack of the common law as to matters coming within the purview of the act.

Confessing inability to find any case in Missouri involving the common-law duty of a carrier to the employees of a carrier to which the first carrier furnishes a defective or unsafe car, the plaintiff represents that the principle involved is identical with that applied where a carrier furnishes defective cars to a shipper or consignee whose employee is injured in loading or unloading such defective cars; citing a number of cases, among them Roddy v. Mo. Pac. Ry. Co., 104 Mo. 234, 15 S. W. 1112; Sasnowski v. Mobile & Ohio Railroad Co. (Mo. App.), 207 S. W. 865; Teal v. American Min. Co. et al. (Minn.), 87 N. W. 837; St. Louis-S. F. Ry. Co. v. Ewan, 26 Fed. (2d) 619. We think such authorities have no application to the situation presented here. Generally speaking, they hold that it is the carrier's duty to use ordinary care to deliver cars reasonably safe for the contemplated *use* of shippers and their employees while the cars are being so *used* by them for such purpose as loading the same or placing them in position to be loaded by the shipper for use in transportation by the receiving carrier. Here the cars were merely tendered and for the distinctly different purpose alone of inspection, and the Terminal stood in no contractual relation or privity with the Wabash in respect of its subsequent use of the cars.

The determination of the common-law duty, if any, which defendant owed plaintiff in the premises is of primary importance; for in order to render any one liable to another for a negligent injury, he must have owed a duty to the latter, the violation of which was the cause of the injury. [20 R. C. L. 45.] The plaintiff says that inasmuch as the service of inspection he was rendering was indirectly in furtherance of the Terminal's business and directly in furtherance of the Wabash's, and as the car was in the possession and control of

the defendant at the time, plaintiff's status was that of invitee of defendant. The emphasized citations in support are Bennett v. Railroad, 102 U. S. 577, 26 L. Ed. 235; Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Tinkle v. St. Louis-S. F. Ry. Co., 212 Mo. 445, 110 S. W. 1086; Roman v. King, 289 Mo. 641, 233 S. W. 161, 164; Simmons v. Jockey Club, 334 Mo. 99, 66 S. W. (2d) 119; Gilliland v. Bondurant, 332 Mo. 881, 59 S. W. (2d) 679; Degitz v. M. K. & T. Railroad Co., 97 Kan. 654, 156 Pac. 743, 745. No useful purpose would be served by reviewing those cases, except the last cited one, for the situations involved in them bear no resemblance whatever to the one before us.

In the Degitz case, supra, there was an agreement between the defendant (in that instance the delivering carrier) and the Union Pacific Railroad (the receiving carrier) that cars arriving on the M. K. & T. consigned to the Union Pacific, were to be transferred to the latter by the former by placing them on a certain transfer track of the M. K. & T. to be taken over by the Union Pacific after inspection by its employees. After so delivering three cars on the transfer track the deliverer, without signal or warning, ran its engine violently against said string of cars which the receiver's inspectors had become engaged in inspecting. Before the transfer was made the deliverer had notified the receiver that one of said cars was for shipment over the latter's line upon which a train would be going out shortly. Thus it appears that the deliverer's suggestion induced immediate inspection and affected the deliverer with imputed knowledge that the inspectors would likely proceed at once to inspect the cars. In other words, the deliverer created an extra hazard and then committed active negligence that proximately caused the injury. It is true the court there denominated the injured inspector's relation to the delivering carrier as that of invitee—an unessential if not inaccurate denomination of his status. Quite obviously, that case furnishes no parallel to this one.

Several cases of the above group define, in varying form of statement, the relation of invites; for example: ''The owner . . . is liable in damages to (invited) persons . . . for injury occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation.'' [Bennett v. Louisville, etc., Ry. Co., supra.]

In the plaintiff's former case, supra, we held that in transferring the string of cars to the Wabash track for inspection the Terminal was a licensee of the former. The line of demarcation between the status of licensee and that of invitee is oftimes shadowy and indistinct, and in a general sense one who is invited on premises is a licensee. [45 C. J. 790.] The distinction deducible from the author-

ities may be stated thus: An invitee to a place of business is one who goes there, either at the express or implied invitation of the owner or occupant, on business of mutual interest to them both, or, in connection with business of the owner or occupant which is there being carried on; while a licensee is one who goes on property of another either by express invitation or with his implied acquiescense, solely in pursuit of the licensee's own business, pleasure or convenience. "It is frequently said that this element of interest in, or benefit to, the owner or occupant, or mutual interest or benefit, is necessary to give rise to an implied invitation, and in the absence thereof the person entering does not occupy the status of invitee." [45 C. J. 813.]

Granted that the cars were still (in the legal sense) in the possession of the Terminal; had it not relinquished the right of control, not to regain it in any part unless and until a car or cars might prove unfit for its or their journey, in which event it or they would be rejected by the Wabash? We think so. Such, even, was contingent upon the then indeterminate fact of acceptance or rejection and might or might not become a matter of mutual interest or concern to both carriers, or to the Terminal alone, and in respect of rejected cars only; for only such was the Terminal required to remove from the transfer track. The evidence does not show in this instance that any car was rejected but does affirmatively show that the car in question was retained by the Wabash and (inferentially) by it repaired. The inference seems a fair one, that rejection was exceptional and acceptance usual; also, that in the matter of the Wabash's inspection the element of mutuality was wholly lacking as between the Terminal and the Wabash. It seems perfectly obvious that they stood in a reciprocal rather than mutual relation to each other. Such tendering of the cars and such accepting of them, did not constitute a joint enterprise but constituted separate and distinct acts of reciprocity. The duties of each, therefore, with respect thereto pertained only to its own separate act. As already stated we held in plaintiff's former case that the Terminal was a licensee. Inevitably then, the reciprocal relation of the Wabash was that of licensee of the Terminal; or, if invitee of the latter, then the Terminal was an invitee of the Wabash. We are of the opinion each was a licensee of the other. The plaintiff stood in the shoes of the Wabash. Except in the interest of accuracy in definition or in legal terminology it little matters, in this case, what was the exact status for reasons which will later appear.

Recurring now to the question of alleged knowledge and "timely notice," in their common-law aspect, as imposing a duty upon the Terminal concerning the defective grabiron. As shown above, the question of knowledge as imputed by the Safety Appliance Act is not relevant to plaintiff's specification of common-law negligence.

However, the plaintiff in this latter connection contends that the evidence warranted a finding that "after the Terminal had properly performed its duty to inspect it had actual knowledge of the defective condition (necessarily of long standing, in view of the then rottenness of the board referred to) at the time it received the car some four days before the injury, or during said period; and if it failed to inspect, it had implied knowledge because the same could have been discovered, by the exercise of ordinary care, in performing the duty of inspection.'' [Doyle v. Bridge Terminal Railroad Co. 326 Mo. 425, 31 S. W. (2d) 1010, is cited.] That was a master and servant case, brought under the Federal Employers' Liability Act. It was held therein that the fact old rusted wire over which the servant tripped was securely imbedded in the ground, worn solid and smooth, warranted an inference that the master had constructive knowledge in time to have removed it in due care. Manifestly, that case has no application to this one.

It will be observed that in the closing part of the above contention it is impliedly conceded that the Wabash—and by the same token the plaintiff—in making the contemplated inspection could, in the exercise of ordinary care, have discovered the defects. The contention implies, also, that the Wabash had previously failed to make such inspection before delivery of the long-time defective car to the Terminal in the first place—an omission upon its part but one degree more remote than the Terminal's in point of causation. The question of timely notice, or warning, is not in the case as there is no specification in the pleadings respecting that matter.

Under the facts in this record we are of the opinion that under common-law rules no duty to the Wabash rested upon the Terminal to make an inspection, and, it inevitably follows, no duty to the plaintiff. It was the Wabash's duty that plaintiff was performing, and in the performance thereof he and the Wabash were one in their relation to the Terminal. The very nature of this duty would bar the Wabash and, by the same token, the plaintiff. In speaking of the master's nondelegable common-law duty of inspection, Judge THOMP-SON in his work on negligence (Vol. 4, Sec. 3791) said:

"The duty of inspection is an absolute duty. The master must see that the proper inspections are actually made. The meaning is, that the person of whatsoever grade in the services, appointed to discharge this duty of inspection, is the master's *alter ego*.''

Certainly the plaintiff as well as the Wabash had no right to expect, and their course of conduct shows they did not expect, that the Terminal would not deliver defective or uninspected cars. Liability of the defendant is by the plaintiff predicated upon the fact that the defect could have been discovered in the exercise of ordinary care by inspection. The plaintiff was under duty to make such inspection

and from experience he was acquainted with the danger inherent therein.

So, under the facts, irrespective of whether the plaintiff was in the exercise of reasonable care for his own safety, it appears that his injuries were proximately due to his own voluntary exposure of himself to known and appreciated danger incident to the work in which he was engaged (45 C. J., pp. 1043-1044, see, also, on "incurred risk" Stein v. Oil & Grease Co., 327 Mo. 804, 816, 39 S. W. (2d) 345, 349), and, the premises considered, that the defendant was under neither statutory nor common-law liability to the plaintiff. The case is most unfortunate for plaintiff, but as the verdict was not based on liability under the law, it, like the verdict in plaintiff's former case, cannot rightly be permitted to stand. Accordingly, the judgment is reversed.

The foregoing opinion by HAYS, J., in Division One is adopted as the opinion of the Court en Banc. All concur.