BROOKS

v.

ILLINOIS TERMINAL R. CO.

No. 28853.

St. Louis Court of Appeals.

Missouri.

June 15, 1954.

Wayne Ely and Alphonso H. Voorhees, St. Louis, Ely & Ely, St. Louis, of counsel, for appellant.

Courtney S. Goodman, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action for damages arising out of personal injuries sustained by the plaintiff when a metal rack fell upon him while he was loading automobile tires into a freight car. The car in question was supplied by the defendant to the plaintiff's employer and the plaintiff charges that the defendant company was negligent in supplying a car with the rack insecurely attached or defective. The jury returned a verdict for four thousand dollars in favor of the plaintiff and from the judgment following defendant prosecutes this appeal.

The plaintiff, who was about forty-eight years of age, was employed by the Springmeier Shipping Company as a car loader. The shipping company maintained a freight loading dock. Its freight yard was wide enough to accommodate three sets of tracks and extended for a length of about 300 to 350 feet. A watchman was on duty in the yard at all times. Various kinds of freight were loaded by the company into cars that were furnished to it by the defendant, Illinois Terminal Railroad Company.

At about 11:30 o'clock on the night of May 25, 1951, the defendant delivered to the Springmeier Shipping Company a class G car, which was the class of cars used in hauling heavy freight. It was designed to haul automobiles so that they could be carried one above the other inside of the car. When so used, the top automobile rested upon a metal rack and was hoisted high enough so that another car could be placed below it. This metal rack, when not so used, was pulled up to the ceiling of the car. The car was constructed of steel and was 9 feet 2 inches wide and 10 feet 6 inches high by its inside measurements.

Brooks, the plaintiff, started loading the car at 8:30 on the morning of May 26, which was about nine hours after it had been placed in the yard by the Illinois Terminal Railroad. He was assisted by a man named Krueger. After they had loaded one end of the car with sundry kinds of freight in cartons they started loading automobile tires. These were not stacked evenly, one upon the other, but alternate tires were overlapped in a manner which the plaintiff called "lacing them together". When the stack was about three or four feet high, the plaintiff stood on top of it to stack more tires which were passed to him by Krueger. At this time the tires started to fall, causing Brooks to lose his balance, and in order to brace himself he grabbed the automobile rack above him. The rack came down striking him across the back and pinning him on the stack of tires. He could not free himself and Krueger, with the aid of another car loader named Bobbitt whom Krueger called to assist, manually lifted the rack high enough to free Brooks.

The rack was suspended from a frame that went around the top of the car and such racks when fully raised are held in place by two catches and a chain according to Brooks. He stated that after the rack had fallen the latches and chain were miss-

ing and he did not know what held it up prior to the time that it fell.

Krueger stated that he saw Brooks start to lose his balance and reach up to steady himself and saw the rack fall. He then called for help and Bobbitt came into the car. There was no mechanical way to lift the rack so both of them by their bodily strength raised it high enough for Brooks to squirm from under it. Krueger looked to see what caused the rack to fall and saw that there was no chain there. Bobbitt's testimony was about the same as Krueger's. He said that there was no chain to hold the rack up. He also said that it weighed over a thousand pounds and that he and Krueger could only lift it high enough for Brooks to crawl out from under it.

This occurred on a Saturday around quitting time and afterwards Brooks was taken home by Krueger in his automobile.

Brooks went to bed when he got home and suffered from pain in his back. On the following Monday he was directed to a doctor by the Springmeier Shipping Company and this physician found him suffering from a fractured vertebra.

The defendant called the foreman of the Springmeier Shipping Company as a witness. He testified that he went into the car shortly after the rack fell and found two chains lying in the rack. Three men lifted the rack up until it was about a foot above the tires and then they used the chains to hold it in that position.

The rest of the testimony offered by the defendant, which is pertinent to the question before us, was that of two car inspectors and their foreman. The car had been inspected on May 22 and May 23 and was considered suitable for use at that time. All three said the car rack was in good order as they judged it by a visual inspection. It was said that the rack was raised by cables and that when it reached the top it was held there by two safety hooks, one on either side. The mechanism was operated by a chain that ran through a pulley. One of the witnesses said that there were chains that held the rack up and then later stated that all that held it up was the cable and the two latches or hooks.

◼ There is but one point raised by this appeal and that is that the court erred in overruling defendant's motion for a directed verdict at the close of the defendant's case and in overruling defendant's after-judgment motion for judgment in accordance with its motion for a directed verdict. This, of course, simply goes to the sufficiency of the evidence to support the verdict. It is axiomatic that in determining the sufficiency of the evidence to sustain a verdict and judgment we accept plaintiff's evidence as true and disregard the defendant's evidence except as it may aid the plaintiff's case, and we give the plaintiff the benefit of every legitimate inference. Caswell v. St. Louis Public Service Co., Mo.Sup., 262 S.W.2d 40.

◼ The defendant was charged with negligence and actionable negligence is the breach or nonperformance of a duty which the party charged with the negligent act or omission owed to the one suffering damage thereby. Settle v. Baldwin, 355 Mo. 336, 196 S.W.2d 299. The defendant was a common carrier and it was its duty to use ordinary care to deliver cars reasonably safe for the use of the shipper and the shipper's employees who load and unload the cars. Settle v. Baldwin, supra; Markley v. Kansas City Southern R. Co., 338 Mo. 436, 90 S.W.2d 409; Stoutimore v. Atchison, T. & S. F. R. Co., 338 Mo. 463, 92 S.W.2d 658.

It follows that if the car was delivered to the Springmeier Shipping Company with the heavy hoisting rack so insecurely held at the top that it would fall in the ordinary course of loading freight, there was evidence upon which the jury could find the defendant negligent. It cannot be said that Brooks' attempt to brace himself by grabbing the rack would be out of the ordinary or a thing sufficient in itself to cause the rack to fall if it had been securely fastened, for, in the ordinary course of events, it would be natural and perhaps necessary for the loader of heavy freight to brace

himself and hold to parts of the car in which the freight was being loaded. The rack did fall and did pin Brooks under it, and he then saw that there was no chain or catch to hold it up. This was certainly evidence that it was not securely fastened at that time.

But the defendant contends that there is no evidence that it was defective at the time it was delivered to the shipper. We are cited to Rice v. White, Mo.Sup., 239 S.W. 141; Crews v. Illinois Terminal R. Co., Mo.App., 260 S.W.2d 765; Pietraschke v. Pollnow, Mo.App., 147 S.W.2d 167; and Brown v. St. Louis County Gas Co., Mo.App., 131 S.W.2d 354. In all of these cases it was held that the evidence disclosed that the offending instrumentality was not in the control of the defendant or that there was no basis for a proper inference that the negligence complained of was committed by the defendant. The factual situations presented are quite different from the case under consideration. One much more close in point of fact is Markley v. Kansas City Southern R. Co., 338 Mo. 436, 90 S.W.2d 409, 413, where the plaintiff fell through a hole in a car furnished by the defendant to plaintiff's employer. In discussing the sufficiency of the evidence to sustain an inference that the hole was in the car at the time of delivery to the plaintiff's employer, the court stated:

"Plaintiff's superintendent said that he did not know whether he saw the car before plaintiff was injured; that it was a regular coal car; that he did not know how many cars had been ordered for that particular time; that they did not dare order more cars than needed because of demurrage; and that if they 'kept the cars more than 48 hours they ran into money.' All of this evidence tended to show that usually cars were not kept on the switch very long, but it did not show anything about this specific set of cars. It cannot be inferred that there was a hole in the bottom of this car when delivered, because it would have to first be inferred that it had not been on the switch very long, which fact was not shown, but would also have to be inferred from the evidence that cars were not usually kept on the switch very long. Such an inference would be strained and far fetched rather than reasonable."

It will be readily seen that the evidence lacking in the Markley case is present in the one before us. As stated the car was delivered to the shipping company about nine hours before Brooks started to load it. It was placed in a narrow freight yard of about 350 feet in length which was at all times guarded by a watchman. This is sufficient to supply the evidence held to be lacking in Markley v. Kansas City Southern R. Co., and from it the jury could reasonably infer that the car was in the same condition when Brooks started loading it as it was when it was delivered to Springmeier Shipping Company.

Since Brooks testified that a rack, such as the one in the car, is held by a chain and latches and that both of these were missing, there was evidence from which the jury could find that the defendant delivered to the shipping company a car wherein the rack was defective or insecurely attached to the frame in the top of the car.

The court therefore did not err in overruling the motions challenging the sufficiency of the evidence, and it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the Circuit Court is accordingly affirmed.

ANDERSON, P. J., BENNICK, J., and ADAMS, Special Judge, concur.