Norman **WHITNEY, Plaintiff-Respondent,**

v.

**CENTRAL PAPER STOCK COMPANY, a corporation, Defendant-Appellant.**

No. 33272.

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 14, 1969.

Richard M. Stout, John V. LaBarge, Jr., Kirkwood, for defendant-appellant.

Hullverson, Richardson and Hullverson, Orville Richardson, and Martin J. Toft, St. Louis, for plaintiff-respondent.

SMITH, Commissioner.

This is an appeal by defendant-appellant from a judgment of $5000.00 rendered against it in a jury tried case for personal injuries sustained by plaintiff-respondent. Defendant contends that the case was improperly submitted to the jury as an invitee-injured case using MAI 22.03 modified. This is based upon the asserted grounds that (1) the evidence failed to establish the existence of the defect when defendant parted with the possession of the trailer on which plaintiff was injured, and (2) the evidence established plaintiff should have known of the dangerous condition in the exercise of ordinary care.

Defendant is a company engaged in the scrap paper business. Plaintiff's employer, Johnston Foil Division, American Metal Climax, Inc., (hereinafter employer) is a company which makes paper products. In the course of its operation employer produces scrap paper for which it has no use, but which is of use and benefit to defendant. As a result a course of dealing between defendant and employer has developed over a period of years. Defendant delivers to employer's premises a trailer belonging to defendant. To this is connected a blow-pipe by defendant's employee. A blower forces scraps of paper, a by-product of employer's laminating process, through the pipe, and into defendant's trailer. When the trailer is full, after a period of a week or longer, employer contacts defendant which picks up the full trailer. Defendant makes no charge for carrying away the paper, which it uses in its business, nor does it pay employer for the paper.

At the time of the accident in question, plaintiff was employed on the 11:00 P.M. shift. His duties included checking periodically to make sure the blow-pipe was properly discharging the scrap paper into defendant's trailer. He would usually make these checks by looking out a window into the trailer. Immediately prior to the accident he noted that the blow-pipe had fallen and the paper was being blown improperly for correct loading of the trailer. He turned off the blower, picked up a broom and proceeded to the trailer to re-attach the blow-pipe and sweep the paper scraps into the correct position in the trailer. He entered the trailer, the floor of which was covered with paper scraps to a depth of one or two inches, took two steps and his right leg went through the floor of the trailer, causing the injuries for which he sought recovery. The evidence established that the lighting of the floor of the trailer coming from the employer's windows was adequate to see. The evidence further established that the paper as it came out of the blow-pipe was in strips and had a tendency to weave together, and we believe the jury could reasonably infer that such weaving effect could and did conceal any hole in the floor of the trailer.

The trailer had been delivered to employer's premises by defendant sometime between a week and seventeen days before the accident. In keeping with the course of dealing between defendant and employer no employee or agent of defendant had been at the trailer site after its delivery. The employer's employees were responsible for seeing that the trailer was loaded properly after it was delivered. On occasions it was necessary for employees of the employer to enter the trailer to sweep the scraps into proper position, particularly as the paper began to substantially fill the trailer. Defendant could anticipate that employees of employer would have occasion to enter the trailer while it was located on employer's premises. There was no evidence of the actual usage of this trailer while on employer's premises. The trailer was parked in the open some distance from the employer's building, but there is no evidence that it was in any way protected by fence or guard while on employer's premises.

Plaintiff's petition sought recovery on the basis of the negligence of defendant in failing to keep the trailer in proper repair, failing to inspect the trailer, concealing the defective condition of the trailer, and failing to warn of the dangers.

 Plaintiff submitted as his verdict-directing instruction MAI 22.03, Invitee Injured. The dangerous condition submitted was " * * * there was a hole in the floor of defendant's trailer and as a result the floor was not reasonably safe for persons reasonably expected to be in the trailer, * * *." It is to be seen that as submitted to the jury plaintiff conditioned his recovery upon defendant's actual or constructive knowledge of the existence of a hole in the floor. There was no requirement in the instruction that the jury find the hole existed at the time of delivery. We do not believe the evidence warranted such a submission. It is first necessary to examine the duty which defendant owed to plaintiff. The parties are in dispute as to whether plaintiff was an invitee or a li-censee. We think neither, as we are here concerned with a chattel not actually in the possession of defendant, but we think the precise terminology is of little importance. Defendant furnished the trailer to employer for defendant's economic benefit. It was in the scrap paper business, and the nature of its business required it to have a source of supply of scrap paper. The trailer was supplied for the economic benefit of defendant, and the fact that employer also obtained benefit does not affect defendant's legal status. See Markley v. Kansas City Southern Ry. Co., 338 Mo. 436, 90 S.W.2d 409, a case very similar to this case, although involving a common carrier. The duty imposed is not limited to carriers but to those who negligently furnish a dangerous instrumentality for a business purpose, clearly the case here. See Committee Comment 2 to MAI 26.01. In Reed v. Swift & Co., Mo.App., 117 S.W. 2d 636, this court found liability to an employee of another where the employee was helping defendant's driver unload a shipment of meat and stepped through the floor of defendant's truck. The duty found to exist there is equally present in this case.

Defendant does not dispute that it knew it was necessary from time to time for employees of employer to enter the trailer in order to insure the proper loading of the scrap paper, and the evidence supports an inference of such knowledge. Such activities on the part of employer's employees were for the benefit of defendant. In such posture it was defendant's duty to furnish a trailer which was reasonably safe for the intended use by the employer's employees. Markley v. Kansas City Southern Ry. Co., supra; Reed v. Swift & Co., supra; Sykes v. St. Louis & S. F. R. Co., 178 Mo. 693, 77 S.W. 723. And defendant was required to exercise ordinary care to determine whether the trailer was in fact safe at the time of its delivery to the employer's premises, and if not to either repair it or warn of the danger. We cannot, however, find either legally or factually a basis for a continuing duty on defendant to inspect after delivery, nor is defendant

an insurer of any defects occurring after delivery. Markley v. Kansas City Southern Ry. Co., supra. Under the facts here we hold that in order to recover on the basis of a hole in the floor, it was necessary for plaintiff to establish the presence of that hole at the time of delivery to employer's premises. It is in this regard that we think plaintiff's submission was improper. There was no evidence, direct or circumstantial, that the hole existed at the time of delivery to employer's premises. Plaintiff would have us indulge the presumption that if the hole existed at the time of accident it must have existed for some time prior thereto. This we cannot do. The trailer was upon the employer's premises for at least seven days and possibly as long as seventeen days. There was no evidence from which it could be concluded that the hole did not come into being after delivery and prior to the accident. The cases in which a present condition was presumed to have existed at some time prior to the accident involve either very short periods of time, Brooks v. Illinois Terminal R. Co., Mo.App., 269 S.W.2d 136 (nine hours); or surrounding circumstances sufficient to justify an inference that an established fact must have existed at a certain time in the immediate past, Brock v. Gulf, Mobile and Ohio Railroad Company, Mo., 270 S.W.2d 827 [3, 4].[1] The evidence at trial here did not establish either of these situations, and did not warrant recovery against defendant based upon its negligence in failing to discover and warn of the hole. See Markley v. Kansas City Southern Ry. Co., supra.

Plaintiff relies heavily on one bit of testimony to support the conclusion that the hole had existed at the time of delivery. Plaintiff was asked the condition of the wood around the hole when he inspected the trailer the morning after the accident. He stated the wood was "rotten." Defendant objected that the answer was a conclu-

sion. The court sustained the objection and ordered the answer stricken. We agree with the plaintiff that the court's ruling was erroneous.

Witnesses are permitted to express conditions in terms understandable to the average person, even though the term utilized is a summary of a combination of sensory impressions or separate physical conditions. The test is that stated in Brown v. Kroger Co., Mo.App., 358 S.W.2d 429, l. c. 433: " * * * when it is impossible or extremely difficult for a witness to convey an accurate and actual meaning, and the nature of the thing described may be more clearly and practically conveyed to the jury by a summary of the witness's impressions, or by comparison with some ordinary object or condition familiar to the court or jury, then the practical administration of justice requires acceptance of the testimony even though it may be, in a sense, the conclusion of the witness."

We believe "rotten" as it concerns wood fully meets the test. It is difficult to think of a more accurate method of description of wood in that condition, or one more easily understood. But accepting the plaintiff's description of the wood as proper evidence does not establish the existence of the hole at the time of delivery of the trailer. It establishes no more than the possibility that the wood in the trailer was in such a condition at the time of delivery that a hole could develop or that the floor was otherwise unsafe for persons thereon. There was no evidence from which a jury could determine whether the hole was old or new. Plaintiff essentially concedes that this evidence does not support the theory submitted by his verdict-director by stating in his brief, " * * * In other words, even if the hole was created after the trailer came into the possession of plaintiff's employer, nevertheless, if the floor board was rotten during a period of which it was in the defendant's possession the

1. The *Brock* case really appears to stand for the continuation of a pre-existing condition for a substantial period of time (two years) where the evidence failed to establish any change.

trailer was defective and dangerous, and the defendant is charged with notice thereof." Plaintiff's brief further admits " * * * from all of which the jury could infer *either* the existence of the hole when the trailer was delivered *or* a rotten, defective and easily penetrated condition of the one or two inch boards which made up the bed of the trailer." But this is not the submission to the jury. The verdict-director was premised on the existence of a hole known actually or constructively to defendant. The evidence is insufficient to establish the existence of such hole at the time of delivery which is the point at which defendant's knowledge, actual or constructive, is determined on the evidence here.

Normally, we determine the submissibility of plaintiff's case upon the theory actually submitted and not upon possible but unsubmitted theories. If the evidence fails to support the submitted theory we normally reverse outright without remand. But here in the interest of justice we will remand the case. Plaintiff adduced substantial evidence concerning the age of defendant's trailer, the policies on inspection and repair of defendant's trailers, the general maintenance policies and facilities of defendant in regard to its trailers. Additionally, there was the evidence that the wood in this particular trailer was rotten. These matters might support a jury finding that defendant failed to exercise ordinary care to discover an unsafe condition in the trailer provided by it. We do not say that such evidence would necessarily establish the discoverability of the defect causing the injury. We remand here because we do not know to what degree the erroneous ruling of the court as to the condition of the floor may have influenced counsel to make the erroneous submission rather than the proper pleaded submission, or precluded counsel from introducing evidence of the discoverability of a rotten condition of the wood, and a resultant unsafe trailer bed.

Defendant has raised other points including among others excessiveness of the verdict and certain conduct of plaintiff's counsel claimed to have prejudiced the jury. We need not consider these as we conclude that in the interests of justice retrial should be had on all issues, and the claimed errors may not arise again. We do rule defendant's contention that the evidence established as a matter of law that plaintiff should have known of the dangerous condition in the exercise of ordinary care. This argument is based on defendant's interpretation of the evidence that plaintiff had previously been in the trailer. This we believe to be a matter for a jury. The interweaving of the paper could have concealed any hole in the floor. Our inability to presume the existence of the hole on date of delivery leaves us equally unable to presume its appearance at any given point in time. The evidence is not conclusive that plaintiff, in the exercise of ordinary care, could have seen the hole in view of the light conditions. The evidence does not clearly establish that plaintiff had previously been in the trailer, nor does it establish, as we have previously pointed out, that the hole existed when plaintiff may have been in the trailer. As defendant points out, it is possible the hole was caused by the falling of the blow-pipe immediately prior to the accident.

The judgment is reversed and the cause remanded for new trial.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this Court. Accordingly, the judgment is reversed and the cause remanded for new trial.

WOLFE, P. J., and BRADY, J., concur.

BRUCE NORMILE, Special Judge, dissents.

BRUCE NORMILE, Special Judge (dissenting).

I respectfully dissent. I do not agree with the majority opinion that: "the evidence is insufficient to establish the existence of such hole at the time of delivery." I believe that there was substantial circumstantial evidence to this effect and that this evidence justified the submission of the case on plaintiff's theory.

I do agree with the opinion as to the defendant's duty towards the plaintiff; and that it was necessary for the plaintiff " * * * to establish the presence of that hole at the time of delivery to the employer's premises" in order to show defendant's actual or constructive knowledge of the danger so there would be a duty to warn or repair. I agree also that the testimony that the wood was "rotten" should have been admitted; and that the evidence did not establish as a matter of law that plaintiff should have known of the danger.

In determining the sufficiency of the evidence to establish that the hole in question existed in the defendant's trailer at the time of delivery, we must consider the evidence in the light most favorable to the plaintiff, accord him the benefit of all supporting inferences fairly and reasonably deducible from the evidence and must disregard the defendant's evidence except insofar as it may aid the plaintiff's case. Burk v. Missouri Power & Light Company (Mo., 1967) 420 S.W.2d 274. Unfavorable inferences should also be rejected. Baumle v. Smith (Mo., 1967) 420 S.W.2d 341.

As to this issue the evidence most favorable to the plaintiff is as follows:

THE TIME PERIOD: The majority opinion assumes that the trailer may have been on the employer's lot for a period from a week to seventeen days before the accident. There was some testimony as to both periods. However, in addition, Mr. Robnek, defendant's chief stockholder and operator, testified that "A normal period of time at the plant (for loading) ran anywhere from approximately a week to two weeks." There was also testimony that the trailer was only one-fourth full at the time of the accident. The plaintiff testified that the trailer might or might not have been there the previous night.

THE HOLE: First and importantly, all of the evidence is that the hole was in existence prior to the occurrence. The plaintiff's foot did not go through the wood floor but *into an open hole already there*. There was no evidence that the floor gave way beneath plaintiff or that any part or portion of the wood floor was pushed through to make a hole. The hole into which the plaintiff stepped was five inches in width and twelve and one-half inches in length. The oak wood floor was two and one-half inches thick. The edges of the hole were rugged and the wood around the hole was rotten. The hole was located about the center of the back of the trailer approximately six inches from a five-inch steel beam running across its open end. Defendant had not inspected the trailer nor looked for a hole in its floor at the time it was placed on the employer's premises. The hole was covered by the interwoven paper scraps in the trailer at the time plaintiff stepped into it.

THE TRAILER: This trailer was made in 1945 and was 21 years old at the time of the plaintiff's injury in August 1966. It had been purchased in a used condition by the defendant in 1961 or 1962. It was about 9 feet wide and 25 to 30 feet long. The roof and sides were made of thin gauge steel. There were holes in the tin siding. Defendant's Exhibit 1, a photograph of the exterior of the trailer, showed that it was rusted and pock-marked. There was evidence that it had been run into occasionally. The trailer was caved in on the left side. The defendant did not have a repair or maintenance department and defendant's witnesses did not know the last time that this trailer had been

repaired or in any way given service or maintenance.

THE USE OF THE TRAILER: The trailer had been placed on the employer's premises at 6106 South Broadway in St. Louis, which are on the east side of the street and which consist of two buildings divided by a railroad track. The trailer was parked across the railroad tracks and behind the buildings. Mr. Robnek, testified that: "The trailer was isolated actually in the yard area where the blow pipe was." The blower pipe, which was about six inches around and like a stove pipe, was partly rusted and " * * * had a kind of a u-shape in it going back up in the truck." The body of the pipe touched the ground. It was hung on the side of the trailer by a wire. The little scraps of paper blown through the pipe into the trailer were about three by one-half inches in size and like paper ribbons. The trailer was loaded automatically. The sole function of the trailer while on the employer's premises was to receive the scrap paper which was blown into it. The trailer was not otherwise used or moved during the time it was on the employer's premises. The only purpose that plaintiff or his fellow employees might have to enter the trailer would be to push the paper material back into the front of the trailer. This had not been necessary on this trailer because it was not full enough at the time of the injury to require sweeping back. After it fell from where it was attached on the side of the trailer, the pipe was located about eight inches from the left side of the truck.

OTHER HOLES: At this time defendant had ten trailers of this type. On at least one prior occasion the use of fork lifts in them while unloading had caused a hole in the floor of a trailer. Defendant's employee, Mr. Totten, who had been employed by defendant for five years before the time of the trial and whose job it was to pick up and deliver these trailers and make some repairs to them, testified that he had not seen or patched holes in any other trailers except the one so damaged. The defendant had never replaced the floor in the trailer in which the plaintiff was injured.

Drawing the most favorable inferences from the above facts leads me to the conclusion that a submissible case was made as to the existence of the hole in the trailer floor at the time of its delivery to the employer's premises so as to charge the defendant with actual and constructive knowledge of the danger and to place him under the duty of warning or repairing. Some of the inferences which may be drawn are as follows:

FIRST: From the evidence that it took a week to fill a trailer and that this trailer was one-fourth full, the jury could infer and properly find that the trailer had been delivered to the employer's premises less than two days prior to the plaintiff's injury.

SECOND: "Matters of common knowledge and experience may be used by jurors in drawing inferences and reaching conclusions from the evidence." Miller v. Sabinske (Mo.App., 1959) 322 S.W.2d 941, 947; and Missouri courts will take judicial knowledge of "things which are within the common knowledge, observation and experience of men generally." ABC Liquidators, Inc. v. Kansas City, 322 S.W.2d 876, 885 (Mo., 1959). Thus we can easily establish the major premise that a hole five inches wide and twelve and one-half inches long could not rot through a two and one-half inch thick wood floor in a period of two to seven days. The minor premise which has been proved is that at the time of the injury there was such a hole with rugged and rotten edges in existence in such a floor. Absent some other explanation the reasonable and legitimate inference and conclusion is that the hole was present at the time of delivery two to seven days previously. In his treatise, Wigmore discusses the use of *subsequent existence* as evidence of existence at an earlier time. II Wigmore On

Evidence (3rd Ed.) Section 437 P. 413–418. It is noted there that a *subsequent* existence is evidential of an earlier one. It is further noted that "Here, as with prior indications, the *interval of time* to which any inference will be allowable must depend upon the nature of the thing and the circumstances of the particular case." Wigmore cites the case of Brock v. Gulf, Mobile & Ohio Railway Company (Mo., 1954) 270 S.W.2d 827, to indicate that " * * * surrounding circumstances may be such as to justify an inference that an established fact must have existed at a certain time in the immediate past." However, in Wigmore's Students Textbook of the Law of Evidence, Sec. 80, P. 114 a more specific example is given as follows:

"For example, the existence of a dangerous hole in a sidewalk on June 15th may be evidenced by the prior or *later existence* of a hole at that point on June 1st or *on June 30th;* here, of course, the evidential fact should not be taken at too distant a date, otherwise on the principle of explanation, it could be explained away by the probability that the hole had been repaired in the interval or had been caused in the subsequent interval." (Emphasis added.)

The above example extends the period of prior existence of a hole much further back in time and under circumstances subject to many more alternative inferences than do the facts of the instant case.

THIRD: "The strength (or weakness) of the offered inference depends upon the *number and probability of other possible inferences from the same fact.*" Wigmore's Students Textbook Sec. 22, P. 54, I Wigmore on Evidence (3rd Ed.) Sec. 30–36. The inferences in favor of the plaintiff here are greatly strengthened because there is no evidence nor alternative inferences as to the cause of the hole or as to any intervening force after its delivery to the employer's premises. There is positive evidence as to the "gentle" use

of the trailer in an isolated place on the employer's premises. Judicial notice can be taken that blowing paper scraps three inches by one-half inch could not cause a hole of this kind. There was evidence that plaintiff had not needed to go into the trailer since it had not filled enough to require the paper to be pushed to the front. This being true plaintiff's fellow servants would not have been required to enter the trailer either. If no one had gone into the trailer while it was on employer's premises, it is even more likely that there was nothing to cause a hole subsequent to the delivery.

There was evidence that the pipe fell. However at this stage that evidence should be disregarded since it is not favorable to plaintiff. Even if it were considered, reasonable and legitimate inferences could not be drawn from it to show causation of the hole. The evidence was that the pipe was attached to the left side of the trailer while the hole was in the center of it. After it fell the pipe remained about eight inches from the left side of the trailer. The pipe resembled stovepipe which would be very light and it was curved from the ground in a u-shape up into the trailer. Thus, it could not have been heavy or fallen very hard. It would be highly speculative and conjectural to infer that the falling of the pipe was associated with the hole.

There is absolutely no evidence of any other force affecting the floor of the trailer subsequent to delivery. The lack of alternative inferences adds strength to plaintiff's favorable ones. Assume, for example, that upon delivery to employer this trailer had been locked in a closed warehouse; that no access were allowed to it; that the hole was then found. Upon such facts is not the compelling inference that the hole pre-existed delivery? Would not a finding to the contrary appear to be inherently improbable and contrary to physical facts or laws? Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885. Actually the facts here are almost

as strong in view of the placement and use of the trailer and the lack of alternative evidence or inferences.

FOURTH: Reasonable and legitimate inferences could also be drawn by the jury from the age and condition of the trailer. It was 21 years old and had had little maintenance. It had holes in the side, rust spots, and pock marks. It had been backed into; it was caved in on the side; and at the time of the injury it had this hole in the floor. All of these things did not happen in the two to seven days it was on the premises of the plaintiff's employer. It can thus be inferred that none of these things happened during that time.

FIFTH: There was positive testimony that one, but only one, of defendant's 10 trailers had previously had a hole in it. If this is taken as the major premise and the minor premise is that *this trailer* had a hole in it, the inference or conclusion is that this is the trailer which earlier had a hole. If this is concluded, the actual or constructive knowledge of the defendant clearly appears. It is true that the defendant's witness, Totten, indicated that the hole in the first trailer was in a different area of the floor. Nonetheless, this portion of his testimony was unfavorable to plaintiff and could be disregarded. Further the credibility of the witness was for the jury who might have believed him as to the existence of a prior hole but not as to its location. I do not believe that this portion of the evidence would alone be sufficient to pose a jury question; but I do believe that it has probative value and with the other facts and circumstances, assists in constituting sufficient and substantial evidence for submission to the jury.

As to the cases cited, I think that Markley v. Kansas City Southern Railway Company, 338 Mo. 436, 90 S.W.2d 409 is quite distinguishable on its facts. In that case, train cars were loaded by dropping crushed rock through a tipple pipe from a bin into railroad cars. This constantly caused holes in the floors of the cars. Holes had to be repaired in many cars before they could be loaded; and some holes were so big that they "couldn't hold a bale of hay." *Markley* held that the case was not submissible because sufficient circumstances were not shown to justify submission. The court stated that the existence of the hole at time of delivery "* * * could be established by circumstantial evidence," but noted that there was no evidence in the record as to what the hole looked like, whether it was old or weathered or new, whether the railroad car in question was an old or new one, or when it was delivered. The case was remanded by the court because it reasonably appeared that proof would be available to show these surrounding circumstances. In effect, it was held the case was submissible if such circumstances were shown. The kind of evidence sought on remand in the *Markley* case was actually present in this case.

In the case of Brock v. Gulf, Mobile & Ohio Railroad Company, supra, the testimony showed the presence of the hole *only* on the day of the injury, and at a time *prior* to two years before the injury. However, the court stated: "From (other circumstances) * * * and the size, condition and the appearance of the hole and area about its location in 1950 (The time of the injury), the jury could infer and find that the hole in question was not of recent origin, but had developed gradually over a long period from the use of the pump." The court went on to hold: "The facts and circumstances concerning the hole, its location and appearance bespeak its prior existence for a considerable period." I would think that the evidence in the instant case is much more favorable to plaintiff than it was in *Brock*.

Plaintiff also cited several other cases which are analogous. Brady v. Terminal Railroad Association of St. Louis, 340

Mo. 841, 102 S.W.2d 903 involved the breaking of a grab iron on a railroad car because the board to which it was attached was rotten. The court considered the condition was necessarily of long standing in view of the rottenness of the board involved. The case of Reed v. Swift & Company (Mo.App.) 117 S.W.2d 636 was quite similar on the facts (The plaintiff stepped *into a hole* in the floor of defendant's truck). The court noted that the description of the hole "to the effect that the wood around the hole was frayed and rotten and made no splinters, justifies the conclusion that this unsafe condition of the floor of the truck was of long standing, the truck having been a four year old two ton one." (The trailer here was 21 years old.) In the case of Stoutimore v. AT&SF Railway Company, 338 Mo. 463, 92 S.W.2d 658, similar inferences as to the long standing of a defect were drawn from an analogous situation. As noted in a portion of the opinion: "The defects in the dog, ratchet, and brake staff, which plaintiff's evidence tended to show existed, were not defects which could suddenly occur. For iron to wear away even where working against iron, considerable time must elapse."

A case should not be withdrawn from the jury unless the evidence and the reasonable and legitimate inferences to be drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Baumle v. Smith, Mo., 420 S.W.2d 341. It must also be submitted if there is any substantial evidence from which the jury could reasonably conclude that a plaintiff is entitled to recover. McNamee v. Ehrhardt (Mo., 1968) 433 S.W.2d 318, 320. It is my opinion that upon the evidence in this case and the favorable inferences to be drawn therefrom, reasonable minds could disagree; that there is substantial evidence on this issue; and that it was properly submitted to the jury who found for plaintiff. I would affirm.